CT Corporation

**Service of Process Transmittal**
07/14/2015
CT Log Number 527466546

**TO:**   Brett Coco
LifePoint Health, Inc.
330 Seven Springs Way
Brentwood, TN 37027-5098

**RE:**   **Process Served in Kentucky**

**FOR:**   Lake Cumberland Regional Hospital, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Joseph Carr, individually and by and through his next friend, Rona Carr, Pltf. vs. Lake Cumberland Regional Hospital, LLC, etc. and John Husted, M.D., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Pulaski County Circuit Court, KY<br>Case # 15CI00680 |
| **NATURE OF ACTION:** | Medical Injury - Improper Care and Treatment - July 10, 2014 - Lake Cumberland Regional Hospital |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Frankfort, KY |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 07/14/2015 postmarked on 07/10/2015 |
| **JURISDICTION SERVED :** | Kentucky |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days following the day this paper is delivered to you |
| **ATTORNEY(S) / SENDER(S):** | Anri B. Oldther<br>Oldfather Law Firm<br>1330 South Third Street<br>Louisville, KY 40208<br>502-637-7200 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/15/2015, Expected Purge Date: 07/20/2015 |
| | Image SOP |
| | Email Notification,  Brett Coco  brett.coco@lpnt.net |
| | Email Notification,  David Fausett  david.fausett@lpnt.net |
| | Email Notification,  Debbie McGee  debbie.mcgee@lpnt.net |
| | Email Notification,  Melissa Todd  melissa.todd@lpnt.net |
| | Email Notification,  Michelle Walker  MICHELLE.WALKER@LPNT.NET |
| | Email Notification,  Felicia Johnson  felicia.johnson@lpnt.net |
| | Email Notification,  Virginia Smith  Virginia.smith2@lpnt.net |



DEFENDANT'S
EXHIBIT

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**TO:**   Brett Coco
LifePoint Health, Inc.
330 Seven Springs Way
Brentwood, TN 37027-5098

**RE:**   **Process Served in Kentucky**

**FOR:**   Lake Cumberland Regional Hospital, LLC  (Domestic State: DE)

**SIGNED:**   C T Corporation System
**ADDRESS:**   306 W. Main Street
Suite 512
Frankfort, KY 40601
**TELEPHONE:**   717-234-6004

Information displayed on this transmittal is for CT
Corporation's record keeping purposes only and is provided to
the recipient for quick-reference. This information does not
constitute a legal opinion as to the nature of action, the
amount of damages, the answer date, or any information
contained in the documents themselves. Recipient is
responsible for interpreting said documents and for taking
appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

Pulaski Circuit Clerk – Civil
50 Public Square
P. O. Box 664
Somerset, KY 42502-0664



CERTIFIED MAIL®

7014 2120 0003 4562 1334



U.S. POSTAGE ≫ PITNEY BOWES

ZIP 42501 $ 013.48⁰
02 1P
0001375878 JUL 10 2015

RESTRICTED
DELIVERY

Lake Cumberland Regional Hospital, LLC,
d/b/a Lake Cumberland Regional Hospital
and d/b/a Commonwealth Bariatric Center
Serve: CT Corporation System
306 W. Main Street, Suite 512
Frankfort, KY 40601

RETURN RECEIPT
REQUESTED

| AOC-105 Doc. Code: CI<br>Rev. 1-07<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | **CIVIL SUMMONS** | Case No. _15-CI-00680_<br>Court ☑ Circuit ☐ District<br>County Pulaski |
|---|---|---|

**PLAINTIFF**

Joseph                                    Carr
1182 Richey Road

Felicity                    Ohio                    45120

**VS.**

**DEFENDANT**

Lake Cumberland Regional Hospital, LLC, etc.

305 Langdon Street

Somerset                    Kentucky                    42503

**Service of Process Agent for Defendant:**

CT Corporation System

306 W. Main St., Suite 512

| Frankfort | | Kentucky | 40601 |
|---|---|---|---|
| | | | 1st 5 of Zip |

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: _7/9_, 2015                    _George Flynn_____ Clerk

By: _____ D.C.

| **Proof of Service** |
|---|
| This Summons was served by delivering a true copy and the Complaint (or other initiating document) to: |
| this _____ day of _____, 2_____.<br>Served by: _____<br>_____ Title |



COMMONWEALTH OF KENTUCKY
PULASKI CIRCUIT COURT
DIVISION ____
CIVIL ACTION NO. _15-CI-00680_

JOSEPH CARR, individually,                                    PLAINTIFF
and by and through his
next friend, Rona Carr


vs.                          **COMPLAINT**


LAKE CUMBERLAND REGIONAL HOSPITAL, LLC          DEFENDANTS
d/b/a LAKE CUMBERLAND REGIONAL HOSPITAL
and d/b/a COMMONWEALTH BARIATRIC CENTER
305 Langdon Street
Somerset, KY 42503

  SERVE:  CT Corporation System
      306 W. Main St., Suite 512
      Frankfort, KY 40601

JOHN HUSTED, M.D.

  SERVE:  Secretary of State
      Summonses Branch
      700 Capital Ave., Suite 86
      Frankfort, KY 40601

      Last Known Addresses of John Husted, M.D.:
      c/o Kevin Rehwald
      Rehwald, Glasner and Chaleff
      5855 Topanga Canyon Blvd., Suite 400
      Woodland Hills, CA 91367.

      c/o Mission Surgical Clinic
      3660 Park Sierra, Suite 105
      Riverside, CA, 92505.

* * * * * * * * *

Plaintiff, Joseph Carr, by counsel, for his Complaint against the above named Defendants, states as follows:

1. Plaintiff, Joseph "Joey" Carr ("Carr"), is and at all times relevant to this Complaint has been a citizen of the State of Ohio.

2. Rona Carr is the mother of Carr. Rona Carr's affidavit as next friend is attached at TAB 1.

3. Carr is disabled mentally and physically and incapable of managing his own affairs. Carr has been disabled mentally and incapable of managing his own affairs since prior to April 24, 2009.

4. Rona Carr's affidavit attesting to Carr's inability to manage his own affairs is attached at TAB 2.

5. Carr has been adjudged disabled as a result of the "severe" impairment of "depression" by the Social Security Administration as of April 28, 2008 under sections 223(d) and 1614(a)(3)(A) of the Social Security Act.

6. Defendant, Lake Cumberland Regional Hospital, LLC d/b/a Lake Cumberland Regional Hospital ("LCRH LLC"), is a Delaware limited liability company with its principal place of business in Brentwood, Tennessee and is duly authorized to do business in the Commonwealth of Kentucky.

7. LCRH LLC operates a hospital in Pulaski County, Kentucky known as Lake Cumberland Regional Hospital ("LCRH"), a business that held itself out as capable of providing specialized services to persons such as Carr, at all times

2

relevant to this Complaint. All allegations herein concerning LCRH shall be deemed to also be allegations as to LCRH LLC.

8. LCRH LLC's principal and sole business is the ownership, operation and management of LCRH and other medical services in Kentucky. LCRH LLC's principal place of business is in the Commonwealth of Kentucky.

9. LCRH LLC and LCRH operated a business in Pulaski County, Kentucky, known as Commonwealth Bariatric Center ("CBC"), a business that held itself out as capable of providing specialized services to persons such as Carr, at all times relevant to this Complaint. All allegations herein concerning CBC shall be deemed to also be allegations as to LCRH LLC and LCRH.

10. Collectively, LCRH LLC, LCRH, and CBC shall be referred to herein as "Hospital Defendants."

11. Defendant, John Husted, M.D. ("Defendant Husted"), is a physician and was practicing during the pertinent time period in Pulaski County, Kentucky. Dr. Husted held himself out as capable of providing specialized services to persons such as Carr.

12. Plaintiff states on information and belief that Defendant Husted is a non-resident of this Commonwealth, currently residing in the State of California, with a last known addresses c/o Kevin Rehwald, Rehwald, Glasner and Chaleff, 5855 Topanga Canyon Blvd., Suite 400, Woodland Hills, CA 91367 OR c/o Mission Surgical Clinic, 3660 Park Sierra, Suite 105, Riverside, CA, 92505.

3

13.  Defendant Husted is a person for whom personal jurisdiction is authorized by KRS 454.210(2)(a). As a result, the Secretary of State shall be deemed to be a statutory agent for service of process upon Defendant Husted.

14.  Acting through its employees and agents, both agents in fact and ostensible agents, CBC provided medical services to Carr beginning on or about September 30, 2008, in Pulaski County, Kentucky.

15.  Acting through its employees and agents, both agents in fact and ostensible agents, LCRH provided medical and hospital services to Carr beginning on or about April 24, 2009, in Pulaski County, Kentucky.

16.  Defendant Husted provided medical and surgical services to Carr beginning on or about September 30, 2008, in Pulaski County, Kentucky.

17.  Defendant Husted and Hospital Defendants represented to Carr, the community, and others that Defendant Husted was able to provide specialized care in bariatric surgery, and that he would be available for continuity of care purposes.

18.  Beginning in 2008, and continuing through 2010, Defendant Husted performed bariatric surgery in association with LCRH and CBC.

19.  Beginning in 2008, and continuing through 2010, Defendant Husted and Hospital Defendants held out Defendant Husted as the medical director of, and employed surgeon of, CBC.

20.  Defendant Husted consulted with Carr about bariatric surgery commencing in September 2008. Defendant Husted scheduled Carr for a laparoscopic, possibly open, duodenal switch surgery ("DS") on April 24, 2009.

4

21. During the DS, the small intestine that the stomach normally empties into (the duodenum) is "switched" to the downstream portion of the small intestine (the digestive limb).

22. On information and belief, Defendant Husted was the only surgeon in Kentucky or the surrounding area performing the DS.

23. Another surgery Defendant Husted performed at LCRH was the VERGITO, where a vertical gastrectomy is completed (the excess capacity of the left side of the stomach is removed), followed by an ileal transposition (the ileum is brought up and spliced back into the intestine further upstream), followed by an omentectomy (removal of the omentum, the fatty sheet inside the abdomen which drapes over the intestine).

24. The VERGITO was not an approved procedure by any standards of bariatric surgery. Plaintiff states on information and belief that the VERGITO was not performed anywhere else in America because it was (and is) considered a human experimental procedure never approved in the United States.

25. Hospital Defendants allowed Defendant Husted to advertise and perform the VERGITO. Defendants did not submit the VERGITO to an institutional review board ("IRB") prior to allowing Defendant Husted to perform the VERGITO at CBC or LCRH. Nor did Defendants submit any other surgery or procedure to an IRB for approval.

26. As a requirement of undergoing bariatric surgery pursuant to the National Institutes of Health Criteria and pursuant to Defendants' own policies,

5

prior to undergoing surgery patients must have a psychological evaluation by a Clinical Psychologist to determine patient comprehension and readiness for surgery, as well as potential surgical and post-surgical patient motivation, compliance and stress factors.

27. On information and belief, Defendants failed to perform a psychological evaluation on Carr.

28. By September 2008, Carr had an extensive history of psychiatric problems and diagnoses, including bipolar disorder and depression with psychotic features. Carr reported to CBC and Defendant Husted that he heard voices, that those voices were usually harmful, and that they instructed him to commit suicide. Carr had suicidal thoughts and self-injured through cutting. Defendants knew or should have known Carr's psychiatric history.

29. Patients with psychiatric problems such as Carr are not mentally or emotionally equipped to benefit from a bariatric procedure, which requires a significant life-style change even with successful surgery.

30. Patients with psychiatric problems such as Carr are not mentally or emotionally equipped to handle the complications which are a potential risk of this type of surgery and which, when they occur, as they did here, require sophisticated management.

31. Defendants knew or should have known that a patient such as Joey Carr could not cope with a bariatric procedure such as the one performed due to his psychiatric history.

6

32.  No prudent bariatric program would approve bariatric surgery on a patient such as Carr under the circumstances that existed in April 2009.

33.  No prudent bariatric surgeon would perform bariatric surgery on a patient such as Carr under the circumstances that existed in April 2009.

34.  Defendant Husted performed surgery on Carr on April 24, 2009. During the surgery, and without any prior consent from Carr, Defendant Husted altered his planned surgery (a DS) and instead performed a vertical sleeve gastrectomy, ileal transposition effect, and removal of the omentum.

35.  Defendant Husted performed an unrecognized, unaccepted, and experimental procedure on Carr on April 24, 2009, instead of the scheduled DS procedure. It is unknown exactly what type of procedure Defendant Husted performed on Carr on April 24, 2009. On information and belief, this procedure resembles the VERGITO, in that it includes a vertical sleeve gastrectomy, ileal transposition effect, and omentum removal.

36.  Carr was not a suitable candidate for the bariatric surgery Dr. Husted performed on him.

37.  Defendant Husted knew or should have known that the surgery he performed on Carr was a human experimental procedure that he was not authorized to perform during the April 24, 2009 procedure.

38.  Defendant Husted did not have privileges for the bariatric procedure he attempted to perform on Carr. Defendant Husted did not have privileges for the bariatric procedure he actually performed on Carr.

7

39. Following Carr's surgery, Carr could not get in touch with Defendant Husted for follow-up care. CBC failed to provide, or was unable to provide, the necessary and promised follow-up care.

40. Before Carr's surgery, LCRH and CBC were or should have been on notice of the surgical results of Defendant Husted, which included numerous failing quality indicators, "yellow flags" and significant instances of impaired patient safety.

41. Hospital Defendants should have warned patients such as Carr about problems suffered by Defendant Husted's patients, but they did not do so.

42. Hospital Defendants failed to monitor Defendant Husted's quality indicators, and failed to respond appropriately when they should have to his failure to meet those quality indicators.

43. By the time of Carr's surgery, Defendant Husted's track record should have resulted in a suspension of all further surgical procedures pending investigation and thereby prevented Carr from having any surgery.

44. Hospital Defendants knew or should have known that Defendant Husted was experimenting on Defendants' bariatric patients.

45. Hospital Defendants failed to provide protection for its bariatric patients, such as Carr, when they were subjected to experimentation by Defendant Husted.

8

46. Defendants failed to exercise ordinary care in the establishment, planning, set-up, management, supervision and/or operation of the surgical weight loss program, operated as CBC.

47. Hospital Defendants failed to warn Joey Carr, both before and after his April 24, 2009 surgery, of the complications he was facing due to Defendant Husted's surgical procedure where he performed an unrecognized, unaccepted and experimental bariatric surgery on Carr.

48. Defendants permitted, or failed to prevent, negligent or other tortious conduct by persons, whether or not their servants or agents, upon the premises or with instrumentalities under their control, and these actions harmed Carr.

49. Defendants, acting jointly and individually and through their employees and agents, both agents in fact and ostensible agents, informed, advertised and marketed to Carr, to agencies of the Commonwealth of Kentucky responsible for licensing healthcare providers, and to the community, that Hospital Defendants and Defendant Husted would and could provide the level of care needed and required for bariatric surgeries and for the care required for complications of such surgeries.

50. Hospital Defendants advertised and promoted Defendant Husted as CBC's skilled and experienced bariatric surgeon, all for the purpose of furthering their business interests.

51. The advertisements and marketing materials promoting CBC and Defendant Husted were unfair, unconscionable, false, misleading and deceptive.

9

52.   Defendants failed to provide meaningful informed consent to Carr of reasonable alternatives, or of the risks associated with his surgery.

53.   Defendant Husted had a duty to have the surgical privileges that would have allowed him to perform Carr's surgery on April 24, 2009.

54.   Hospital Defendants had a duty to ensure that its surgeons had the privileges that would allow them to operate on patients like Carr.

55.   Hospital Defendants allowed Defendant Husted free license to perform whatever surgery he wanted with no restrictions.

56.   Defendant Husted had a duty to properly train all care providers, nurses and consulting physicians, in the clinical care and expected complications of bariatric surgery patients.

57.   Hospital Defendants had a duty to properly train all care providers, nurses and consulting physicians, in the clinical care and expected complications of bariatric surgery patients.

58.   Defendant Husted had a duty to refrain from human experimentation without adequate safeguards.

59.   Hospital Defendants had a duty to prevent Defendant Husted from experimenting on their patients.

60.   Hospital Defendants had a duty to ensure that proper policies and procedures were instituted and enforced at CBC and LCRH to prevent its surgeons from experimenting on patients.

10

61.  A bariatric program which allows the surgeon to perform an experimental surgery without an IRB and without adequate research to make sure the procedure is safe violates all reasonable standards of care.

62.  A bariatric surgeon who performs an experimental surgery without an IRB and without adequate research to make sure the procedure is safe violates all reasonable standards of care.

63.  Defendants had a duty to ensure that patients like Carr would have continuity of care should Defendant Husted be unavailable to care for patients like Carr.

64.  Hospital Defendants failed to provide reasonable and adequate nursing and other hospital care to Carr, as a result of the lack of proper training and supervision of nurses, consultants, and hospital staff who provided medical care to Carr, and the lack of proper promulgation, application, and enforcement of sufficient or appropriate policies, procedures, rules, regulations, and standards with respect to the care provided by them.

65.  Following his bariatric surgery, Carr began experiencing respiratory problems. His medical care providers related these problems to allergies.

66.  On or about July 10, 2014, it was confirmed that Carr was aspirating food into his lungs as a result of his bariatric surgery.

67.  Carr learned for the first time on or about July 10, 2014 that his respiratory problems may be related to his surgery by Defendant Husted.

11

68. Due to the severe and continuing respiratory complications from his bariatric surgery, on or about March 19, 2015, Carr underwent medically necessary revision surgery by Matthew D. Kroh, M.D. Carr discovered for the first time that Defendant Husted had performed a surgery that appeared incomplete and had left Carr with permanent revisions of his anatomy not recognizable as any approved bariatric procedure.

69. Pursuant to KRS 413.140(2), this action accrued at the time the injury was first discovered or in the exercise of reasonable care should have been discovered. Carr did not discover, and in the exercise of reasonable care, could not have discovered, that he had sustained an "injury" as that term is defined by Kentucky law, due to Defendants' care until (at the earliest) July 10, 2014.

70. Pursuant to KRS 413.170(1), a person of unsound mind is allowed to bring any action within the same number of years after the removal of the disability as is allowed to a non-disabled person to bring the action after the right accrued.

71. Carr was incapable of managing his affairs at the time any cause of action accrued, and continues to be incapable of managing his affairs.

72. Defendant Husted was, at all times pertinent herein, either an employee of and/or actual or ostensible agent of LCRH and CBC, making those Defendants jointly and severally liable for Husted's negligence and gross negligence.

73. As a result of Defendants' actions and failures to act, Carr has in the past and will in the future endure further depression, psychiatric issues, respiratory problems, and other illnesses and injuries.

12

74. As a result of Defendants' actions and failures to act, Carr has in the past and will in the future incur significant medical expenses, rehabilitation expenses, severe physical and mental pain and suffering, lost wages, loss of his power to labor and earn money and perform household services, and the loss of enjoyment of life, all in a sum to be determined by the jury.

75. All amounts claimed herein are in excess of the minimal jurisdictional limits of this Court.

## COUNT I – NEGLIGENCE AND GROSS NEGLIGENCE AGAINST ALL DEFENDANTS

76. Plaintiff adopts, reiterates and incorporates by reference those allegations contained herein.

77. Defendant Husted was negligent and grossly negligent in his medical and surgical care and treatment of Carr, and such negligence included, but was not limited to, those actions and failures to act, and breach of duties, as alleged in this Complaint.

78. Defendant Husted failed to exercise the requisite degree of care and skill required of a prudent physician in like or similar circumstances.

79. Hospital Defendants were negligent and grossly negligent, and such negligence included, but was not limited to, those actions and failures to act, and breach of duties, as alleged in this Complaint.

80. Hospital Defendants failed to exercise the requisite degree of care and skill required of a prudent hospital in like or similar circumstances.

13

81. CBC was further negligent and grossly negligent, and such negligence included, but was not limited to, those actions and failures to act, and breach of duties, as alleged in this Complaint.

82. CBC failed to exercise the requisite degree of care and skill required of a bariatric center in like or similar circumstances.

83. Each of the actions and failures to act referred to in this Count were a substantial factor in causing Plaintiff to incur the damages alleged.

## COUNT II - DIRECT HOSPITAL LIABILITY AGAINST HOSPITAL DEFENDANTS

84. Plaintiff adopts, reiterates and incorporates by reference those allegations contained herein.

85. Hospital Defendants owed Plaintiff a duty as set forth herein which arises independently from any or all of the following:

    a. The common law duty to exercise toward Carr that degree of care and skill ordinarily expected of reasonable and prudent hospitals under similar circumstances to follow its own internal guidelines, rules, regulations, bylaws, standards, policies, procedures and the like.

    b. The common law duty to ensure a competent medical staff capable of delivering medical and hospital services to Carr.

    c. The statutory duty under KRS Chapter 216B, including KRS 216B.155, to "develop comprehensive quality assurance or improvement standards adequate to identify, evaluate, and remedy problems related to the quality of health care facilities and services,"

14

as more specifically described therein. This statutory duty includes
following established guidelines for "assessing the credentials of those
applying for privileges." These statutory duties include the obligation
not only to establish, but also to implement and enforce the required
standards. Violation of this statutory duty is actionable under KRS
446.070.

d. The duty to comply with regulations promulgated under KRS Chapter
216B, specifically 902 KAR 20:016, whereby Hospital Defendants are
responsible for developing and adopting policies or bylaws which shall,
*inter alia*, establish a procedure for granting and withdrawing staff
privileges, performing credential reviews, and providing a mechanism
for appeal of decision regarding staff membership and privileges. This
duty includes the obligation not only to establish, but also to
implement and enforce the required standards. Violation of this
regulation is actionable under KRS 446.070.

86. The common law and statutory and regulatory duties set forth above
include the duties associated not only with the initial granting of credentials, but
also with the allowance to maintain privileges thereafter at LCRH and the
establishment and granting of privileges for particular surgical procedures.

87. The Kentucky General Assembly has made an express finding "that the
licensure of health facilities and health services is a means to insure that the
citizens of this Commonwealth will have safe, adequate, and efficient medical care."

15

KRS 216B.010. As a result, the statutes and regulations mentioned herein are of the type which may be enforced by a private right of action under KRS 446.070.

88.   Hospital Defendants failed to meet the common law and statutory and regulatory duties set forth in the preceding paragraphs.

89.   Hospital Defendants have a duty to ensure that surgeons operating at their hospital have privileges to perform the procedures planned.

90.   Hospital Defendants failed to meet this duty, thereby causing injury to Carr.

91.   Each of the actions and failures to act referred to in this Count were a substantial factor in causing Plaintiff to incur the damages alleged.

## COUNT III- VIOLATION OF OTHER STATUTORY DUTIES BY HOSPITAL DEFENDANTS

92.   Plaintiff adopts, reiterates and incorporates by reference those allegations contained herein.

93.   Hospital Defendants had the duty to comply with 902 KAR 20:260 §4, and to appoint a physician medical director in connection with the application for and grant of special health clinic status to CBC.

94.   Each of the actions and failures to act referred to in this Count were a substantial factor in causing Plaintiff to incur the damages alleged.

## COUNT IV – BATTERY AS TO ALL DEFENDANTS

95.   Plaintiff adopts, reiterates and incorporates by reference those allegations contained herein.

16

96.   Defendants had a duty to obtain a valid consent from Carr before his surgery.

97.   Hospital Defendants had a duty to prevent a surgeon without privileges from performing surgery.

98.   Defendant Husted had a duty to refrain from performing surgery for which he was not privileged.

99.   Defendant Husted committed a battery on Carr by performing the April 24, 2009 surgical procedure.

100.   All Defendants participated in a surgical procedure for which no valid consent had been given and for which no privileges had been granted.

101.   Hospital Defendants committed a battery on Carr by aiding and abetting Defendant Husted, by failing to define and enforce the bariatric procedures Defendant Husted was allowed to perform, by failing to require a psychological or psychiatric assessment of Carr before scheduling the surgery, and by such other acts as alleged herein.

102.   Each of the actions and failures to act referred to in this Count were a substantial factor in causing Plaintiff to incur the damages alleged.

## COUNT V – NEGLIGENT TRAINING AND SUPERVISION AS TO HOSPITAL DEFENDANTS

103.   Plaintiff adopts, reiterates, and incorporates by reference those allegations contained herein.

104.   Hospital Defendants had a duty to properly train all care providers, nurses and consulting physicians, including Defendant Husted, in the pre-surgical,

17

surgical, hospital and post-surgical care, and expected complications of, bariatric
surgery patients.

105. Hospital Defendants had a duty to supervise all care providers, nurses
and consulting physicians, including Defendant Husted, in the pre-surgical,
surgical, hospital and post-surgical care, and expected complications of, bariatric
surgery patients.

106. Hospital Defendants failed to meet their duties set forth in this Count.

107. Each of the actions and failures to act referred to in this Count were a
substantial factor in causing Plaintiff to incur the damages alleged.

## COUNT VI – WILLFUL AND MALICIOUS INJURY AS TO DEFENDANT HUSTED

108. Plaintiff adopts, reiterates and incorporates by reference those
allegations contained herein. The allegations herein are in addition to, and not
substitution of, the allegations of gross negligence and punitive conduct alleged
elsewhere in this Complaint.

109. Defendant Husted performed a surgery on Carr on April 24, 2009
which had not been approved for allowance of privileges for that surgical procedure.

110. Defendant Husted performed bariatric surgery on Carr despite the
absence of a psychiatric or psychological assessment on Carr.

111. Defendant Husted was either the actual or *de facto* medical director of
CBC.

112. A bariatric program which allows the surgeon to perform an
unapproved, unrecognized, and unaccepted surgery, without the benefit of an

18

Institutional Review Board or the adequately informed consent of the patient, violates all reasonable standards of care.

113.   A bariatric program which allows the surgeon to perform surgery without compliance with its own policies and procedures violates all reasonable standards of care.

114.   A bariatric program which allows the surgeon to perform bariatric surgery on a patient such as Joey Carr violates all reasonable standards of care.

115.   A bariatric surgeon who performs surgery on a patient such as Joey Carr violates all reasonable standards of care.

116.   Defendant Husted willfully and/or maliciously injured Carr by the actions as alleged herein.

117.   Each of the actions and failures to act referred to in this Count were a substantial factor in causing Plaintiff to incur the damages alleged.

## COUNT VII – NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS

118.   Plaintiff adopts, reiterates and incorporates by reference those allegations contained herein.

119.   Hospital Defendants negligently misrepresented the availability of competent medical and surgical care for the performance of bariatric surgery.

120.   Hospital Defendants negligently informed, advertised and marketed to Carr, to agencies of the Commonwealth of Kentucky responsible for licensing healthcare providers, and to the community that Defendants would and could

19

provide the level of care needed and required for bariatric surgeries and for

handling the complications of such surgeries, all as set forth in this Complaint.

121.  As a result of the negligent misrepresentations of Defendants, Plaintiff

suffered the damages set forth herein.

122.  Each of the actions and failures to act referred to in this Count were a

substantial factor in causing Plaintiff to incur the damages alleged.

## COUNT VIII - VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT UNDER KRS 367.110 et. seq.

123.  Plaintiff adopts, reiterates and incorporates by reference those

allegations contained herein.

124.  The Kentucky Consumer Protection Act ("KCPA") at KRS 367.220(1)

provides a right of action to "[a]ny person who purchases or leases goods or services

primarily for personal, family, or household purposes and thereby suffers any

ascertainable loss of money or property . . . as a result of the use of employment by

another person of a method, act or practice declared unlawful by KRS 367.170 . . .").

125.  KRS 367.170 declares it unlawful to use unfair, unconscionable, false,

misleading or deceptive acts or practices in the conduct of any trade or business.

126.  The acts and practices utilized by Defendants as described herein to

conduct, promote and manage CBC were unfair, unconscionable, false, misleading

and deceptive.

127.  As a result of the violations of the KCPA, Plaintiff suffered actual

damages.

20

## COUNT IX -- JOINT VENTURE/JOINT ENTERPRISE LIABILITY

128. Plaintiff adopts, reiterates and incorporates by reference those allegations contained herein.

129. Hospital Defendants and Defendant Husted had an agreement, express or implied, to operate a surgical weight loss program known as CBC.

130. The operation of this surgical weight loss program was a common purpose shared by Hospital Defendants and Defendant Husted.

131. Hospital Defendants and Defendant Husted had a shared community of pecuniary interest of mutual benefit to all by the operation of CBC.

132. Hospital Defendants and Defendant Husted had the same ability to determine the direction of the common enterprise of a surgical weight loss program, and therefore had an equal right of control.

133. Hospital Defendants and Defendant Husted were engaged in a common enterprise of a surgical weight loss program, through which they all marketed their services, using a combination of money, efforts, skill or knowledge, and subject to their joint control, so that all parties could profit financially thereby.

134. Hospital Defendants and Defendant Husted are jointly and severally liable for all compensatory damages incurred herein on principles of joint venture and/or joint enterprise liability.

## COUNT X -- VICARIOUS LIABILITY OF HOSPITAL DEFENDANTS

135. Plaintiff adopts, reiterates and incorporates by reference those allegations contained herein.

21

136.   Defendant Husted was an employee, and/or an actual or ostensible agent or servant of Hospital Defendants.

137.   Defendant Husted was an actual or ostensible agent of Hospital Defendants as a matter of law.

138.   Hospital Defendants are vicariously liable for all actions and failures to act of any of their employees, agents and/or servants, and ostensible agents, and for the actions and failures to act of Defendant Husted.

## COUNT XI - PUNITIVE DAMAGES AGAINST ALL DEFENDANTS

139.   Plaintiff adopts, reiterates and incorporates by reference those allegations contained herein.

140.   All Defendants are liable to Plaintiff for punitive damages as a result of their willful and wanton conduct, their reckless disregard and their gross negligence, all as alleged herein, which constitutes oppression, fraud, malice, and reckless disregard for the safety of their patients, including Carr.

141.   All Defendants are liable for punitive damages attributable to their direct liability as well as for their liability based on the actions and omissions of their employees, agents, ostensible agents, and servants, including but not limited to Defendant Husted, as alleged herein.

142.   The heightened standard of proof for punitive damages as required by the General Assembly in KRS 411.184(2) is unconstitutional and should be determined to be null and void.

22

143. The restrictions on recovery of punitive damages against a principal or employer as set forth in KRS 411.184(3) are unconstitutional and should be determined to be null and void.

144. In the alternative, Hospital Defendants authorized, ratified or should have anticipated the acts and omissions of its employees, agents, ostensible agents and servants, including but not limited to, Defendant Husted, as alleged herein.

145. In the alternative, Defendant Husted authorized, ratified or should have anticipated the acts and omissions of the CBC employees, agents, ostensible agents and servants, as alleged herein.

146. Each Defendant is liable for punitive damages in an amount to be determined by the jury.

**WHEREFORE**, Plaintiff respectfully demands the following relief:

A. Judgment against the Defendants, Lake Cumberland Regional Hospital, LLC, acting on its own behalf and d/b/a as Lake Cumberland Regional Hospital and d/b/a as Commonwealth Bariatric Center, and John Husted, M.D., jointly and/or severally in favor of Plaintiff, Joseph Carr, in a sum that will fairly and adequately compensate him for the hospital and medical expenses, lost wages, for the permanent destruction of Carr's power to labor and earn money and perform household services, and physical and mental pain and suffering, past, present and future and loss of enjoyment of life and actual damages, all as sustained by Joey Carr;

B. Trial by jury on all issues so triable.

23

C.    For prejudgment interest from April 24, 2009, and interest on any

judgment rendered herein, all in the statutory amount.

D.    Any and all other relief to which he may appear to be entitled.

Respectfully Submitted,

Ann B. Oldfather
Megan J. Hastings
OLDFATHER LAW FIRM
1330 South Third Street
Louisville, KY  40208
Telephone: (502) 637-7200
Facsimile: (502) 637-3999
*Counsel for Plaintiff*

24

## AFFIDAVIT OF RONA CARR

Comes the affiant, Rona Carr, after first being duly sworn, and states as follows:

1. My name is Rona Carr and my home address is 1182 Richey Road, Felicity, Ohio, Clermont County, 45120. I am the mother of Joseph "Joey" Carr, who lives with me and my husband Geoffrey at the same residence.

2. Joey was born on April 26, 1990, and is 25 years old.

3. Joey is disabled mentally and physically and he is incapable of managing his own affairs.

4. Joey resides with me at my residence. Joey has one older living sister.

5. Joey does not have a guardian, committee, curator, or conservator. Joey is solely in my charge.

6. For all the above reasons, I have a right to act as Joey Carr's next friend pursuant to KRS 387.300 and CR 17.03.

Further, Affiant sayeth not.

_____
Rona Carr

STATE OF OHIO          )
                       ) ss
COUNTY OF CLERMONT      )

SUBSCRIBED AND SWORN to before me by Rona Carr this ___9___ day of July 2015, to be her free act and will.

_____
NOTARY PUBLIC

My commission expires: _July 2, 2020_

BEVERLY SHEPPARD
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
July 02, 2020

1

### AFFIDAVIT OF RONA CARR

Comes the affiant, Rona Carr, after first being duly sworn, and states as follows:

1.    My name is Rona Carr and my home address is 1182 Richey Road, Felicity, Ohio, Clermont County, 45120. I am the mother of Joseph "Joey" Carr, who lives with me and my husband Geoffrey at the same residence.

2.    Joey Carr was born on April 26, 1990, and is 25 years old. Joey was 18 years old at the time he obtained bariatric surgery on April 24, 2009. The bariatric surgery was performed by Dr. Husted at Commonwealth Bariatric Center ("CBC") of Lake Cumberland regional Hospital.

3.    Prior to the bariatric surgery, Joey was diagnosed with depression with psychosis, auditory hallucinations, suicidal thoughts, and self-injury through cutting. Before the surgery at CBC, Joey had been institutionalized for his depression and psychotic behavior.

4.    Joey's depression and mental illness are now, and have been for years continually since his surgery, completely debilitating. Since the bariatric surgery at CBC, Joey has tried to kill himself three times. Joey has been diagnosed with major depressive affective disorder with psychotic features, bipolar disorder, schizoaffective disorder, mania, psychosis, generalized anxiety disorder, panic, and post-traumatic stress disorder. He has suffered auditory hallucinations and severe nightmares. He hears voices that tell him to harm himself.

5.    Since his surgery, Joey has been institutionalized at inpatient facilities for his depression and psychotic behavior. He has endured electroconvulsive therapy. He takes psychotropic medications.

6.    Joey has been determined to be disabled under sections 223(d) and 1614(a)(3)(A) of the Social Security Act. Joey was adjudged to be permanently disabled as of April 28, 2008. This determination was made on July 28, 2010. The Social Security Administration determined that objective medical evidence of record supported the finding that Joey had a severe impairment of depression, as defined by 20 CFR 404.1520(c) and 416.920(c), and further that Joey could not perform the physical *and* mental activities required for any work at all. The Administrative Law Judge also concluded that Joey's impairments meet the criteria enumerated in section 12.04 for affective disorders, defined as disorders characterized by a disturbance of mood and accompanied by a full or partial manic or depressive episode. Joey meets the "paragraph A" criteria, which requires proof of medically documented persistence of depressive syndrome and/or manic syndrome. Joey also satisfies the "paragraph B" criteria, which requires proof of bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes, along with other documentation. In Joey's case, the Administrative Law Judge

1

concluded that Joey experienced marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace.

7.      As a result of Joey's mental and physical illness, my husband and I take full-time care of him. Joey lives with us at our residence. He does not work, and we pay all of his bills and expenses. My husband and I bathe Joey and help him use the bathroom. We prepare his meals. We handle all of Joey's financial and other affairs. Joey cannot manage his own affairs. Joey cannot drive. We make sure Joey takes his medications and take him to his doctors' appointments.

8.      Joey is incapable of managing his own affairs, such as attending to any business, or of taking care of himself, and has been since before his bariatric surgery in 2009.

9.      Joey's mind is impaired by his mental disease such that he is incapable of managing his own affairs, and this has been the case since before his bariatric surgery in 2009.

10.     My husband and I are seeking appointment as Joey's guardian, so that we can continue to manage Joey's affairs.

Further, Affiant sayeth not.

_____
Rona Carr

STATE OF OHIO                )
                             ) ss
COUNTY OF CLERMONT           )

        SUBSCRIBED AND SWORN to before me by Rona Carr this ___9___ day of July 2015, to be her free act and will.

_____
NOTARY PUBLIC

BEVERLY SHEPPARD
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
July 02. 2020

My commission expires:

_____

2

**COMMONWEALTH OF KENTUCKY**
**PULASKI CIRCUIT COURT**
**DIVISION 1**
**CIVIL ACTION NO. 15-CI-00680**

**JOSEPH CARR, individually and by and through his**
**next friend, Rona Carr**                                                **PLAINTIFF**

**ANSWER OF DEFENDANT**
v.                            **DEFENDANT JOHN HUSTED, M.D.**

**LAKE CUMBERLAND REGIONAL HOSPITAL, LLC**
**d/b/a LAKE CUMBERLAND REGIONAL HOSPITAL and**
**d/b/a COMMONWEALTH BARIATRIC CENTER**
**AND JOHN HUSTED, M.D.**                                        **DEFENDANTS**

\* \* \* \* \* \* \*

Defendant John Husted, M.D. (hereinafter referred to as Defendant), proceeding *pro se*,

for his Answer to the Plaintiff's Complaint, states as follows:

### FIRST DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's Complaint is barred by the applicable statute of limitations.

### THIRD DEFENSE

Without waiving its denial of liability to Plaintiff, this Defendant states that all damages

alleged in the Complaint may have been caused in whole or in part by Plaintiff's own negligence

and, as such, Plaintiff's claims are barred in whole or in part.

### FOURTH DEFENSE

Without waiving its denial of liability to Plaintiff, this Defendant states that Plaintiff's

injuries and damages may have been caused in whole or in part by the acts, omissions and/or

1

negligence of other persons and/or third parties not under the direction and control of this Defendant, and said acts, omissions or negligence constitute either a complete or partial bar to recovery herein.

## FIFTH DEFENSE

Without waiving its denial of liability to Plaintiff, this Defendant state that any injuries and damages to Plaintiff resulted in whole or in part from intervening acts and/or superceding causes over which this Defendant had no control or for which this Defendant had no responsibility or liability.

## SIXTH DEFENSE

Without waiving its denial of liability to Plaintiff, this Defendant states that the Plaintiff may have failed to mitigate their damages.

## SEVENTH DEFENSE

Except as affirmatively admitted, every allegation of Plaintiff's Complaint is denied.

## EIGHTH DEFENSE

Plaintiff's claims for negligent misrepresentation fail to state a claim upon which relief can be granted.

## NINTH DEFENSE

This Defendant reserves the right to assert additional defenses, whether affirmative or otherwise, about which they presently lack sufficient knowledge or information, but which may become available to them during the course of this litigation through discovery or other means. This Defendant specifically reserves the right to amend their Answer to add additional

2

affirmative defenses.

## TENTH DEFENSE

In defense of Plaintiff's claim for gross negligence, this Defendant hereby incorporates by reference the terms and provisions of KRS 411.184 and 411.186, as well as the applicable terms, provisions and protection afforded by the Constitutions of the United States and the Commonwealth of Kentucky.

## ELEVENTH DEFENSE

Plaintiff's claim for punitive damages against Defendant should be dismissed because any award of punitive damages under Kentucky Law without bifurcating the trial and trying all punitive damages issues separately, if and only if, liability on the merits has been found, would violate Defendant's due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and the due process provisions of the Constitution of the Commonwealth of Kentucky.

## TWELFTH DEFENSE

Plaintiff's claim for punitive damages against Defendant should be dismissed because an award of punitive damages under Kentucky law, which is not subject to a predetermined limit on the amount of punitive damages that a jury may impose, would violate Defendant's due process rights guaranteed by the Constitution of the Commonwealth of Kentucky and violate the excessive fines provision of Section 17 of the Constitution of the Commonwealth of Kentucky.

## THIRTEENTH DEFENSE

Plaintiff's claim for punitive damages against Defendant should be dismissed because a

3

jury, under Kentucky law:

- is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award;

- is not adequately instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment;

- is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidious discriminatory characteristics, including the residence and wealth of the Defendant;

- is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; and

- is not subject to trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of an objective standard.

For the foregoing reasons, such an award would violate the due process and equal protection rights guaranteed under the Fourteenth Amendment to the United States Constitution and Constitution of the Commonwealth of Kentucky.

## FOURTEENTH DEFENSE

Plaintiff's claim for punitive damages against Defendant should be dismissed as being in violation of the United States Constitution, including but not limited to the Fifth and Eighth Amendments, as applied to the states through the Fourteenth Amendment of the United States Constitution.

## FIFTEENTH DEFENSE

Plaintiff's claim for punitive damages against Defendant should be dismissed as being in violation of the Constitution of the Commonwealth of Kentucky, including but not limited to,

4

Articles 2, 17 and 26.

## SIXTEENTH DEFENSE

1.     This Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraphs 1, 2, 3, 5, 6, 16, 22, 65, 66, 67, 68 and 71 of Plaintiff's Complaint and therefore denies same.

2.     The allegations contained in paragraphs 4, 7, 8, 9, 10, 14, 15, 21, 64, 79, 80, 81, 82, 88, 90, 106 and 144 of Plaintiff's Complaint do not pertain to this Defendant and therefore no response is required. To the extent a response is deemed necessary, these allegations are denied.

3.     With respect to paragraph 11 of Plaintiff's Complaint, this Defendant admits that John Husted, M.D. is a physician and previously practiced in Pulaski County, Kentucky, and that Dr. Husted held himself out as capable of providing services in the field of bariatric weight loss surgery. This Defendant denies the remaining allegations contained in paragraph 11.

4.     With respect to paragraph 12 of Plaintiff's Complaint, this Defendant admits that he is a non-resident of this Commonwealth and currently resides in the State of California at the address of c/o Mission Surgical Clinic, 3660 Park Sierra, Suite 105, Riverside, CA  92505. Defendant is without sufficient information or knowledge to form a belief about the truth of the remaining allegations and therefore denies same.

5.     Paragraph nos. 13, 24, 25, 26, 29, 30, 32, 33, 49, 50, 53, 54, 56, 57, 58, 59, 60, 61, 62, 63, 69, 70, 85 (a – d), 86, 87, 89, 93, 96, 97, 98, 104, 105, 111, 112, 113, 114, 115, 124, 125, 129, 130, 131, 132, 133 and 137 contain statements of law and/or legal conclusions for which this Defendant is not required to answer or otherwise respond. To the extent these paragraphs are

5

are deemed to set forth allegations of facts against this Defendant, they are denied.

6.     Defendant admits the allegations contained in paragraph 75 of Plaintiff's Complaint.

7.     With respect to paragraph 17, this Defendant admits that Dr. Husted held himself out as capable of providing services in the field of bariatric weight loss surgery. This Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 17 and therefore denies same.

8.     This Defendant denies the allegations contained in paragraphs 18, 19, 23, 27, 31, 35, 36, 37, 38, 40, 41, 42, 43, 44, 45, 46, 47, 48, 51, 52, 55, 72, 73, 74, 77, 78, 83, 91, 94, 99, 100, 101, 102, 107, 109, 110, 116, 117, 119, 120, 121, 122, 126, 127, 134, 136, 138, 140, 141, 145 and 146 of Plaintiff's Complaint.

9.     With respect to paragraph 20, Defendant admits that he consulted with Carr about bariatric surgery on or about September 2008 and performed bariatric surgery on Carr on or about April 24, 2009. This Defendant is without sufficient information or knowledge to form a belief about the truth of the remaining allegations in paragraph 20 and therefore denies same.

10.    With respect to paragraph 28, this Defendant denies all allegations directed against it. Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 28 and therefore denies same.

11.    With respect to paragraph 34 of Plaintiff's Complaint, Defendant admits Dr. Husted performed a bariatric procedure on Joseph Carr on or about April 24, 2009. This Defendant denies the remaining allegations contained in paragraph 34.

6

12.     With respect to paragraph 39, this Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations directed to Defendant CBC. This Defendant denies the remaining allegations directed against it in paragraph 39.

13.     With respect to paragraph 54, this Defendant admits that it issues privileges to surgeons to perform certain surgical procedures. Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 54 and therefore denies same.

14.     The answers and defenses set forth in this Answer are adopted and incorporated by reference as if fully stated in response to paragraph nos. 76, 84, 92, 95, 103, 108, 118, 123, 128, 135 and 139.

15.     Paragraphs nos. 142 and 143 of Plaintiff's Complaint set forth the Plaintiff's opinion regarding the constitutionality of a state statute and, as such, violates Federal Rule of Civil Procedure 8(a)(2) and should be stricken from the Complaint. To the extent Plaintiff's opinions are deemed to set forth allegations against this Defendant, they are denied.

WHEREFORE, Defendant, John Husted, M.D., having answered the Plaintiff's Complaint, demand as follows:

1.     That the Complaint against it be dismissed with prejudice;

2.     For their costs herein expended;

3.     For leave to file an amended pleading upon completion of discovery; and

4.     All other appropriate relief to which they may now or hereafter appear to be entitled.

7

Respectfully submitted,

John Husted, M.D.
c/o Mission Surgical Clinic
3660 Park Sierra, Suite 105
Riverside, CA 92505
chairtamer@gmail.com
*Pro Se Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed this 31st day of August 2015, mailed to the following:

Ann B. Oldfather
Megan J. Hastings
OLDFATHER LAW FIRM
1330 South Third Street

8

Louisville, Kentucky 40208
*Counsel for Plaintiff*

B. Todd Thompson, Esq.
Millicent A. Tanner, Esq.
Heather R. Cash, Esq.
734 West Main Street, Suite 400
Louisville, Kentucky 40202
*Counsel for Defendant Lake Cumberland Regional Hospital,*
*LLC*

*John Husted, M.D., Pro Se Defendant*

9