UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 15-138-DLB-HAI

GEOFFREY CARR, as Guardian of the Estate                                                  PLAINTIFF
of an Incompetent, JOSEPH CARR

vs.                          **MEMORANDUM OPINION AND ORDER**

LAKE CUMBERLAND REGIONAL                                                                 DEFENDANTS
HOSPITAL, LLC, et al.

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

**I.      Introduction**

This opinion addresses one of several claims that arose out of an allegedly botched bariatric surgery performed by Defendants. In light of the complications Joseph Carr suffered after his surgery, Plaintiff claims that Defendants negligently misrepresented their ability to provide skilled medical and surgical care to bariatric patients. Defendant Lake Cumberland Regional Hospital, LLC (Lake Cumberland) moved for judgment on the pleadings, arguing that a negligent misrepresentation that results in physical harm is not a recognized cause of action in Kentucky. Because Kentucky courts have recognized the tort of negligent misrepresentation only in the context of certain business transactions that result in pecuniary harm, it is unlikely that Kentucky courts would expand existing law to recognize the claim in this context. As a result, Lake Cumberland's motion for judgment on the pleadings (Doc. # 39) is **granted**.

1

## II. Factual and Procedural Background

Defendant Lake Cumberland Regional Hospital, LLC (Lake Cumberland) (d/b/a Lake Cumberland Regional Hospital and d/b/a Commonwealth Bariatric Center) operates a hospital in Pulaski County, Kentucky. (Doc. # 1-3 at 6-7). Commonwealth Bariatric Center (CBC) is a part of the hospital that performs bariatric (weight-loss) surgeries. (*Id.* at 7). Defendant Dr. John Husted, M.D., was the medical director of CBC and performed bariatric surgeries on patients there. (*Id.* at 8).

Plaintiff Geoffrey Carr (Plaintiff) is the court-appointed guardian of his son, Joseph Carr (Carr).[1] (Doc. # 20). In September 2008, Dr. Husted consulted with Carr about bariatric surgery. (Doc. # 1-3 at 8). Husted and Lake Cumberland "represented to Carr, the community, and others that Defendant Husted was able to provide specialized care in bariatric surgery, and that he would be available for continuity of care purposes." (*Id.* at 8). Defendants "informed, advertised and marketed to Carr . . . that [Defendants] would and could provide the level of care needed and required for bariatric surgeries and for the care required for complications of such surgeries." (*Id.* at 13; *see also id.* at 23-24). And Lake Cumberland "advertised and promoted Defendant Husted as CBC's skilled and experienced bariatric surgeon" to further their business interests. (*Id.*)

Dr. Husted scheduled Carr for a surgical procedure called a duodenal switch on April 24, 2009. (Doc. # 1-3 at 8-9). But according to Plaintiff, Dr. Husted did not perform a

---

1 Carr, the original plaintiff in this action, has been mentally disabled and incapable of managing his own affairs since before the allegedly botched surgery that is the basis for this suit. (Doc. # 20 at ¶ 3). Plaintiff Geoffrey Carr was appointed guardian of Carr by the probate court of Clermont County, Ohio, in September of 2015. (*Id.* at ¶ 5). Afterward, Carr filed an amended complaint substituting Geoffrey Carr as Plaintiff. (*Id.* at 1). The amended complaint incorporates by reference all of the allegations in the original complaint. (*Id.*)

2

duodenal switch. (*Id.* at 11). Instead, without prior consent, Dr. Husted performed an "unrecognized, unaccepted, and experimental procedure" on Carr. (*Id.*) "It is unknown precisely what procedure Defendant Husted performed on Carr," but it resembled a "human experimental procedure never approved in the United States." (*Id.* at 9,11).

After Carr's surgery, CBC did not provide "the necessary and promised follow-up care," and Carr could not get in touch with Dr. Husted. (Doc. # 1-3 at 12). Carr also began experiencing respiratory problems that his medical care providers believed were related to allergies. (*Id.* at 15). On July 10, 2014, it was confirmed that "Carr was aspirating food into his lungs as a result of his bariatric surgery." (*Id.*) Due to the "severe and continuing respiratory complications from his bariatric surgery," a different doctor performed revision surgery on Carr on March 19, 2015. (*Id.* at 16). The surgeon discovered that Dr. Husted "had performed a surgery that appeared incomplete and had left Carr with permanent revisions of his anatomy not recognizable as any approved bariatric procedure." (*Id.*)

Plaintiff alleges that, as a result of Defendants' negligent misrepresentations about the availability and competency of the medical and surgical care they offered, Carr "has in the past and will in the future endure further depression, psychiatric issues, respiratory problems, and other illnesses and injuries." (Doc. # 1-3 at 16). Carr also has incurred and will incur "significant medical expenses, rehabilitation expenses, severe physical and mental pain and suffering, lost wages, loss of his power to labor and earn money and perform household services, and the loss of enjoyment of life." (*Id.* at 16-17; *see also id.* at 27).

Plaintiff sued in Pulaski County Circuit Court on July 9, 2015, asserting claims of negligence, gross negligence, battery, negligent training and supervision, willful and

malicious injury, negligent misrepresentation, violation of Kentucky's Health Services and Facilities regulations, violation of the Kentucky Consumer Protection Act, and sought punitive damages against Defendants. (Doc. # 1-3). On July 31, 2015, Defendants removed the case to federal court on diversity jurisdiction. (Doc. # 1). Defendants then moved for judgment on the pleadings on the negligent misrepresentation claim. (Doc. # 39). Plaintiff responded (Doc. # 40), and Defendants replied (Doc. # 41). The motion is now ripe for the Court's review.

### III. Analysis

#### A. Standard of Review

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (internal quotation marks omitted). "A motion brought pursuant to Rule 12(c) is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.*

#### B. Restatement (Second) of Torts § 552

Defendant Lake Cumberland moved for judgment on the pleadings for just one of Plaintiff's many claims–negligent misrepresentation–on the grounds that Kentucky law does not recognize a cause of action for negligent misrepresentation that results in physical harm. The Court looks first to whether Plaintiff plausibly alleges negligent

misrepresentation under Restatement (Second) of Torts § 552.

The Supreme Court of Kentucky explicitly recognized the tort of negligent misrepresentation in *Presnell Construction Managers, Inc. v. EH Construction, LLC*, 134 S.W.3d 575, 582 (Ky. 2004). After surveying past decisions of Kentucky appellate courts and federal courts applying Kentucky law, the *Presnell* court determined that § 552 of the Restatement (Second) of Torts was "consistent with Kentucky case law." *Presnell*, 134 S.W.3d at 580-82. The Supreme Court of Kentucky therefore "join[ed] the majority of jurisdictions" in "adopt[ing Restatement] § 552's standards for negligent misrepresentation claims" in Kentucky. *Id.* at 582.

The Restatement provision *Presnell* adopted provides, in relevant part,

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1).

Critically, § 552 applies to "false information [supplied] *for the guidance of others in their business transactions*" and imposes liability for a resulting "*pecuniary* loss." *Id.* (emphasis added). Plaintiff does not state a claim under § 552 for two separate but related reasons–Defendants' alleged misrepresentation was not part of a business transaction, and Carr's alleged injury is based on physical harm, not pecuniary loss.

First, Plaintiff argues that Lake Cumberland supplied false information about the competence of its services to Carr in a "business transaction" because Lake Cumberland is a for-profit business entity that provides information to promote its business interests.

5

(Doc. # 40 at 8-9, 10-11). But Carr's decision to undergo bariatric surgery with Defendants was not a "business transaction" in any ordinary sense of the phrase–it was a medical decision.[2] In other cases involving negligent misrepresentation claims, Kentucky courts found that lack of context to be "determinative." *See Ky. Farm Bureau Mut. Ins. Co. v. Blevins*, 268 S.W.3d 368, 373 (Ky. Ct. App. 2008) ("In our view, the phrase 'for the guidance of others in their business transactions' is determinative of this issue. The transaction involved in this case was a private sale of residential property from one set of homeowners to another. This was not a business transaction as is required by § 552; therefore, the tort of negligent misrepresentation cannot be established."). That does not mean that § 552 is "the unique entitlement of a commercial plaintiff," as Plaintiff implies. (Doc. # 40 at 8). Section 552's availability does not hinge on the identity of the injured party. But it matters that the misrepresentation occurred in a "business transaction," which is why many other state courts have also "limited negligent misrepresentation claims to statements made in a business or commercial setting." *Hodge v. Craig*, 382 S.W.3d 325, 345 (Tenn. 2012) (collecting cases) (citing *Blevins*, 268 S.W.3d at 373).

Plaintiff cites *Sain v. Cedar Rapids Community School District*, 626 N.W.2d 115, 126 (Iowa 2001) as an example of a court that declined to limit § 552 "to traditional commercial transactions" and instead applied it to other "professional purveyors of information." *Id.* The Iowa Supreme Court held that a high school counselor, like an accountant or an

---

2   Plaintiff cites *Simmons v. Stephenson*, 84 S.W.3d 926, 928 (Ky. App. 2002) to say that some acts by physicians can be commercial. *Id.* at 927-28. But *Simmons* turns on the language of the Kentucky Consumer Protection Act, not § 552. Allegations that could satisfy the "trade or commerce" prong of a consumer protection statute do not necessarily fit within the "business transaction" language of § 552.

attorney, is a person "in the business of supplying information to others," so the rationale of § 552 applied even if high school counselors and students do not engage in "business transactions." *Id.* Even so, the *Sain* court acknowledged that "[h]istorically, those cases which were responsible for developing the tort [of negligent misrepresentation] arose from a business or financial setting, and the recognition of negligent misrepresentation as a separate tort has from the beginning been confined largely to financial or commercial harm in the course of business dealings." *Id.* at 125. And unlike here, the harm in *Sain* was pecuniary–the plaintiff sued because he lost a college athletic scholarship, not to recover for physical harm. Notably, the decision to expand the scope of § 552 in *Sain* was made by the state supreme court, not a federal court sitting in diversity that "should be extremely cautious about adopting 'substantive innovation' in state law." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004).

Second, although Plaintiff does allege some damages that are "pecuniary" (like lost wages and medical expenses), the gravamen of his claim is for injury from the *physical harm* of the allegedly botched surgery, not *pecuniary* losses from a business transaction. Plaintiff is correct that neither § 552 nor *Presnell* expressly preclude claims based on physical harm. But a closer examination of the Restatement and the cases applying it reveal that express preclusion is not necessary. A different, broader provision (§ 311) covers negligent misrepresentations that result in physical harm. (That provision has not been adopted by the Kentucky Supreme Court. *See infra*, pp. 10-13.) Carr's claim falls outside the bounds of § 552 because it falls squarely within the bounds of another type of claim that has been repeatedly distinguished by Kentucky law and the Restatement.

Before *Presnell*, Kentucky courts had "neither adopted § 552 nor explicitly recognized the tort of negligent representation as it relates to *either* economic loss *or* physical harm." *Presnell*, 134 S.W.3d at 580 (emphasis added). Then, "by adopting § 552" in *Presnell*, Kentucky courts recognized that "the tort of negligent misrepresentation defines an independent duty for which recovery in tort for economic loss is available." *Id.* at 582.

What of the tort of negligent representation "as it relates to . . . physical harm"? In a footnote, the court cites to a different Restatement provision, § 311, which imposes liability "for physical harm caused by" action taken by a plaintiff in reliance on "false information" that was negligently given. *Id.* at n.17; Restatement (Second) of Torts § 311(1). The court also references the dissent in *Moore v. Commonwealth*, 846 S.W.2d 715, 718 (Ky. 1992), where Judge Johnson links § 311 and physical harm. *Id.*

The distinction between negligent misrepresentation claims that result in physical harm and ones that result in economic or pecuniary loss is not limited to Kentucky. The Illinois Supreme Court was presented with a § 552 claim, but determined that "[i]n light of our conclusion that the plaintiffs have alleged physical injury, we believe that the Restatement provision which more properly addresses the situation is section 311." *Bd. of Educ. of Chicago v. A, C and S, Inc.*, 546 N.E.2d 580, 592-93 (Ill. 1989). Section 311, said the court, "is broader in its applicability and declares that one who gives false information to another may be liable for physical harm caused by actions taken by that person in justifiable reliance on the information." *Id.*

Nor is the boundary between these types of claims limited to case law. The Restatement comments also draw a distinction between § 552's focus on pecuniary loss and other Restatement sections related to physical harm, explaining that "the scope of

8

[§ 552's] liability is not determined by the rules that govern liability for . . . other negligent misrepresentation that results in physical harm." *Id.* § 552 cmt. a (citing Restatement (Second) of Torts § 311). In particular, the comments note that "[w]hen a misrepresentation creates a risk of physical harm to the person, land or chattels of others, the liability of the maker extends, under the rules stated in §§ 310 and 311, to any person to whom he should expect physical harm to result through action taken in reliance on it." *Id.* cmt. l. But "[u]nder the rule stated in [§ 552], when the misrepresentation is merely negligent and results in pecuniary loss, the scope of the liability is narrower." *Id.*[3]

Moreover, case law further supports the conclusion that a § 552 cause of action is a narrow one designed for particular circumstances unlike the ones at issue here. In *Presnell* itself, the allegedly negligent misrepresentation occurred in the context of an ordinary business transaction, with only pecuniary losses–a contractor sued a construction manager for economic losses that it said resulted from careless coordination of a construction project and "faulty information and guidance" given to the contractors. *Presnell*, 134 S.W.3d at 577-78. And unsurprisingly, none of the cases the *Presnell* court relied on when deciding to adopt § 552 involve claims of physical harm or medical malpractice. Each contemplates liability for misrepresentations in ordinary business transactions. *See, e.g.*, *Seigle v. Jasper*, 867 S.W.2d 476 (Ky. Ct. App. 1993) (attorney

---

3   The Court is not required to ignore all Restatement comments that have not been "expressly" adopted. (Doc. # 40 at 9). Unadopted Restatement comments may not be binding, but they can help illuminate the boundaries of a cause of action. Besides, the comments are consistent with the rest of Kentucky law on negligent misrepresentation, and Kentucky courts have referenced other comments to § 552 and other language from § 552's comment a with approval. *Presnell*, 134 S.W.3d at 582 n.35 (comment a); *PCR Contractors, Inc. v. Danial*, 354 S.W.3d 610, 618 (Ky. Ct. App. 2011) (comments a, e, h) (quoting *Gerhardt v. Harris*, 934 P.2d 976 (Kan. 1997)).

9

who provided a title opinion failed to inform the parties of an easement on the property); *Morton v. Bank of the Bluegrass & Tr. Co.*, 18 S.W.3d 353 (Ky. Ct. App. 1999) (bank failed to disclose factors affecting a borrower's eligibility for credit life insurance); *Chernick v. Fasig-Tipton Kentucky, Inc.*, 703 S.W.2d 885 (Ky. Ct. App. 1986) (auctioneer failed to include accurate information on breeding history and soundness of a mare in a catalogue prepared for auction).

Tellingly, neither the parties nor the Court could identify any Kentucky case allowing a § 552 cause of action in a case like this one. The utter dearth of judicial support alone is not determinative of Plaintiff's claim. But it bears repeating that "[f]ederal courts hearing diversity matters should be extremely cautious about adopting 'substantive innovation' in state law." *Combs*, 354 F.3d at 578. "[W]hen given a choice between an interpretation of state law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path." *Id.* at 577 (internal quotation marks and alterations omitted). Here, the "narrower and more reasonable path" is the one suggested by the plain terms of § 552. The Court will not expand § 552 beyond its natural boundaries to encompass Plaintiff's negligent misrepresentation claim.

    **C.**    **Restatement (Second) of Torts § 311**

With a § 552 cause of action unavailable to Plaintiff in this case, Plaintiff next turns to § 311. However, that section cannot save Plaintiff's claim either–but for a different reason. Although at first blush this case fits much more neatly into the text of § 311, Kentucky has given no indication that § 311 (unlike § 552) is a viable cause of action.

Plaintiff does not dispute that he is asking the Court to do something fairly extraordinary–to be the first court to hold that there is a cause of action under Kentucky law for negligent misrepresentation that results in physical harm, as set out in § 311. That is a problem for Plaintiff. The Sixth Circuit has held that it is "inappropriate for a federal court sitting in diversity to add a new cause of action to state law." *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983). The reason is straightforward–federal courts sitting in diversity are in "a particularly poor position to endorse a fundamental policy innovation" in substantive state law. *Combs*, 354 F.3d at 577-58 (internal quotation marks and alterations omitted). "Absent some authoritative signal from the legislature or the courts of the state, we see no basis for even considering the pros and cons of innovative theories." *Id.* (internal quotation marks and alterations omitted).

There is no "authoritative signal" from Kentucky courts or legislators in favor of adopting § 311, or something like it, in this context. In fact, the few signs point in the other direction. When courts refer to the tort of negligent misrepresentation, they refer to § 552, not § 311. *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 746 (Ky. 2011); *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 567 (6th Cir. 2013) ("The tort of negligent misrepresentation is of recent vintage in Kentucky courts, which only explicitly adopted the tort in 2004, following the language of the Restatement (Second) of Torts § 552."). In *Johnson v. United Parcel Service, Inc.*, 326 S.W.3d 812 (Ky. Ct. App. 2010), the Kentucky Court of Appeals declined to adopt § 311 in the context of employment reference cases. In *Johnson*, the estate of a deceased Kroger employee who was shot by a coworker sued UPS, the shooter's former employer, for not informing Kroger of the worker's problematic employment history when Kroger asked for a reference. *Id.* at

11

814-15. *Johnson* is not as damning as Lake Cumberland claims–the court of appeals merely "decline[d] to expand [the] existing case law on negligent misrepresentation to encompass references given by former employers where there has not previously been a cause of action in this context." *Id.* at 817. Nevertheless, it is a cautionary tale for expansion of the tort of negligent misrepresentation.

The only Kentucky state cases besides *Johnson* to discuss § 311 (or its conscious misrepresentation counterpart, § 310) are the dissent in *Moore* and *Presnell* itself–neither of which provide support for creating a cause of action for negligent misrepresentation in this context. That is in marked contrast to the history of cases marshaled by the *Presnell* court when it expressly adopted § 552. *Supra* at pp. 9-10.

There is good reason for that circumspection. "The limited nature of negligent misrepresentation liability serves to preserve the proper sphere of contractual-based recovery and prevents the creation of tort liability which could unduly impede the flow of communication in society." *Brogan v. Mitchell Int'l, Inc.*, 692 N.E.2d 276, 278 (Ill. 1998). Communications between medical professionals and potential patients are already governed by causes of action more tailored to their nuances. Indeed, Plaintiff's complaint includes several other claims, including a claim under the Kentucky Consumer Protection statute. Allowing a negligent misrepresentation claim to proceed based on Defendants' alleged misrepresentations regarding their ability to perform bariatric surgery would expand the cause of action beyond the limits contemplated by Kentucky courts.

Contrary to Plaintiff's suggestion (Doc. # 40 at 3 n.1), allowing discovery to proceed before resolving this issue would not be appropriate. No amount of discovery can change the law.

## IV.     Conclusion

For all of these reasons, Plaintiff has not stated a claim for negligent misrepresentation under Restatement (Second) of Torts § 552, and Kentucky has not indicated that it would adopt § 311 in this context.  Accordingly,

**IT IS ORDERED** that Lake Cumberland's Motion for Judgment on the Pleadings (Doc. # 39) is **GRANTED**, and Plaintiff's claim for negligent misrepresentation is **DISMISSED WITH PREJUDICE**.  Plaintiff's other claims remain pending.

This 21st day of March, 2017.



Signed By:
David L. Bunning   DB
United States District Judge

K:\DATA\ORDERS\London\2015\15-138 Carr v. Lake Cumberland Hospital MJP MOO.wpd