UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 15-138-DLB-HAI

GEOFFREY CARR, as Guardian of                                                                                               PLAINTIFF
the Estate of Joseph Carr

vs.                         **MEMORANDUM OPINION AND ORDER**

LAKE CUMBERLAND REGIONAL
HOSPITAL, et al.                                                                                                    DEFENDANTS

*** *** *** *** ***

## I.     INTRODUCTION

This is a medical-negligence action brought by Plaintiff Geoffrey Carr, as the Guardian of the Estate of the incompetent Joseph Carr, against the doctor—Doctor John Husted—who performed Joseph's bariatric surgery, and the hospital where the bariatric surgery was performed—Lake Cumberland Regional Hospital ("Hospital"). This matter is currently before the Court on three motions: (1) the Hospital's Motion for Judgment on the Pleadings; (2) the Hospital's Motion for Partial Summary Judgment; and (3) Plaintiff's unopposed Motion to Supplement his Response to the Hospital's Motion for Partial Summary Judgment.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2009, Doctor Husted performed bariatric surgery on Plaintiff at the Commonwealth Bariatric Center in Pulaski County, Kentucky. (Doc. # 1-3 at ¶¶ 9, 34). Commonwealth Bariatric Center is a business operated by the Hospital. *Id.* at ¶ 9.

1

After the surgery, Plaintiff allegedly began experiencing respiratory problems, which his primary care physicians believed to be allergies. *Id.* at ¶ 65. However, Plaintiff asserts that on or around July 10, 2014, he discovered that he had been aspirating food into his lungs, possibly as a result of the bariatric surgery. *Id.* at ¶ 66-67. On or about March 19, 2015, Plaintiff underwent revision surgery, at which point Plaintiff allegedly learned that Doctor Husted had "performed a surgery that appeared incomplete and had left [Plaintiff] with permanent revisions of his anatomy not recognizable as any approved bariatric surgery." *Id.* at ¶ 68.

Plaintiff alleges that without his consent, Doctor Husted performed an "unrecognized, unaccepted, and experimental procedure" on him. *Id.* at ¶¶ 34-35. Plaintiff alleges that Doctor Husted did not have the privileges to perform the surgery as it was performed. *Id.* at ¶ 38. According to Plaintiff, before his surgery, the Hospital was or should have been on notice of numerous concerns over the results of surgeries that Doctor Husted had performed. *Id.* at ¶ 40.

As a result, Plaintiff filed the instant action on July 9, 2015, in the Pulaski County Circuit Court. *Id.* at 5. Plaintiff's complaint asserted eleven causes of action against Doctor Husted and the Hospital. *Id.* at 17-27. The Hospital removed this case from the Pulaski County Circuit Court on July 31, 2015, with Doctor Husted's consent, based on diversity jurisdiction. (Docs. # 1 and 5).

In the instant motions, the Hospital seeks dismissal of Plaintiff's negligent credentialing claim and negligence-*per-se* claims (Doc. # 100). The Hospital has also moved for summary judgment on Count Five, Plaintiff's claims of negligent training and

negligent supervision. (Doc. # 112).[1] The Motion for Judgment on the Pleadings is fully briefed (Docs. # 128 and 142), as is the Motion for Summary Judgment. (Docs. # 126 and 147).

III. ANALYSIS

A. Standards of Review

The Court reviews motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) under a standard nearly identical to that employed when the Court considers a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). Both motions require a court to construe the complaint in the light most favorable to the plaintiff and to accept all of the complaint's factual allegations as true. *Penny/Olhmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). This Court need not, however, "accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker v. Middleburg-Legacy Place, L.L.C.*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007)).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of "showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir.

---

[1] The Hospital's evidence in support of its Summary Judgment Motion consists of excerpts of depositions and an agreement between it and Doctor Husted. (Docs. # 112-2 through 112-6).

3

2008). Once the moving party has met its burden, the nonmoving party must cite to evidence in the record upon which "a reasonable jury could return a verdict" in its favor; a mere "scintilla of evidence" will not do. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986). At the summary-judgment stage, a court "views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008).

**B. Plaintiff's negligent-credentialing claim will not be dismissed.**

In its Motion for Judgment on the Pleadings, the Hospital claims that Counts Two and Five must be dismissed because Kentucky does not recognize the tort of negligent credentialing.[2] (Doc. # 100-1). The Kentucky Supreme Court has not yet directly addressed this question; therefore, this Court must make "the best prediction … of what the Kentucky Supreme Court would do if confronted with [the] question." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004) (internal citations omitted).

The Sixth Circuit has warned that federal courts sitting in diversity "should be extremely cautious about adopting 'substantive innovation' in state law." *Id.* at 578 (internal citations omitted). "[W]here a state appellate court has resolved an issue to which the high court has not spoken" the Court treats that resolution as "authoritative absent a strong showing that the state's highest court would decide the issue differently." *Id.* (citing *Kirk v. Hanes*, 16 F.3d 705, 707 (6th Cir. 1994); *Garrett v. Akron-Cleveland Auto Rental, Inc.*, 921 F2d 659, 662 (6th Cir. 1990)).

---

[2] "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 416 (1997). Here, Kentucky law governs Plaintiff's claims.

The tort of negligent credentialing is unsettled in Kentucky. In 2011, the Kentucky Court of Appeals reversed and remanded a Hopkins County Circuit Court decision for two reasons, finding both evidentiary error and error in the lower court's determination that the tort of negligent credentialing was not viable in Kentucky. *Estate of Burton v. Trover*, No. 2009-CA-1595 (Ky. Ct. App. June 10, 2011). The Court of Appeals opined that "it is proper for this Court to now recognize the tort of negligent credentialing in Kentucky." *Id.* at 5. On appeal from this decision, the Kentucky Supreme Court vacated the Court of Appeals' decision on the evidentiary error, and explicitly declined to either reverse or affirm the recognition of the tort of negligent credentialing. *Trover v. Estate of Burton*, 423 S.W.3d 165, 167-68 (Ky. 2014) ("As it happens, our review convinces us that the trial court's evidentiary ruling was not an abuse of its discretion, as held by the Court of Appeals, and so we are constrained simply to reinstate the trial court's judgment and to leave for another day consideration of a negligent credentialing cause of action.").

Two years later, in an unpublished decision, another panel of the Kentucky Court of Appeals reached the opposite conclusion, "declin[ing] to recognize the tort of negligent credentialing." *Brown v. Trover*, No. 2012-CA-1880, 2016 WL 100311, at *5 (Ky. Ct. App. Jan. 8, 2016). Although the *Brown* Court acknowledged that negligent credentialing had been a recognized cause of action in Kentucky as a result of *Estate of Trover v. Burton*, and that the Supreme Court of Kentucky had vacated that decision on other grounds, it still determined that the tort did not exist in Kentucky and that it should not be recognized for policy reasons. *Id.* at *4-5.

Just two months after *Brown*, another panel of the Kentucky Court of Appeals consolidated three appellate cases from the Pulaski and Marion County Circuit Courts,[3] and in a published opinion "recognize[d] negligent credentialing as a cause of action and as a means by which individuals can hold hospitals liable for the latter's negligent extension of renewal of staff privileges and credentials to independent contractor physicians." *Spaulding v. Spring View Hosp.*, Nos. 2013-CA-842, 2013-CA-912; *Adams v. Lake Cumberland Reg'l Hosp.*, Nos. 2014-CA-600, 2014-CA-707; *Jones v. Spring View Hosp.*, No. 2013-CA-983, 2016 WL 929507 (Ky. Ct. App. Mar. 11, 2016).

On October 13, 2016, the Kentucky Supreme Court granted discretionary review on these consolidated cases, and the appeal is still pending. *Spring View Hosp. v. Spaulding*, Nos. 2016-SC-259-D, 2016-SC-277; *Lake Cumberland Reg'l Hosp. v. Adams*, No. 2016-SC-181-D; *Spring View Hosp. v. Jones*, No. 2016-SC-189.

In sum, the Court has three intermediate appellate decisions to help guide its decision: the published decision in *Burton*, which found that the tort of negligent credentialing existed in Kentucky, but was vacated on other grounds; the unpublished decision in *Brown*, which declined to recognize the tort of negligent credentialing,[4] and the published decision in *Spaulding*, which declared that the tort of negligent credentialing

---

[3] The Hospital is a defendant in one of these cases.

[4] The Hospital also cites to the unpublished decisions in *Kulka v. Vora*, No. 2009-CA-27, 2011 WL 918408 (Ky. Ct. App. Mar. 18, 2011) and *Patterson v. Marshall*, Nos. 2008-CA-119, 2008-CA-157, 2009 WL 1341448 (Ky. Ct. App. July 21, 2009) in support of its argument that negligent credentialing is not a tort in Kentucky. Both of these cases address the tort in dicta, affirming that the Kentucky Supreme Court had not yet recognized the tort of negligent credentialing. Neither case is persuasive on the matter.
    The Hospital also asserts that an additional eight Kentucky Court of Appeals cases disclaim the existence of negligent credentialing. (Doc. # 142 at 6-7). However, each of the eight cases listed refers to *Brown* as "[t]he principal opinion for the group." *See e.g., Wells v. Trover*, No. 2012-CA-001885-MR, 2016 WL 99825, at *1 (Ky. Ct. App. Jan. 8, 2016). These eight cases, plus *Brow*n, were originally a class action, separated upon denial of class certification. *Id.* at *1 n.3. That a single Court of Appeals panel issued nine identical decisions on a single day does not add to the weight or persuasiveness of the "principal opinion" for all, *Brown*.

existed in Kentucky, and which is currently on appeal.

The Hospital argues that the Kentucky Supreme Court's decision to leave the question of negligent credentialing "for another day" and the unpublished decision in *Brown* prove that negligent credentialing is not a tort in Kentucky. (Docs. # 100-1 at 6 and142 at 4). In contrast, Plaintiff argues that *Spaulding*, the vacated *Burton* decision, and *Williams v. St. Claire Med. Ctr*, 657 S.W.2d 590 (Ky. Ct. App. 1983)[5] control the issue, and support the argument that negligent credentialing is a recognized tort in Kentucky. (Doc. # 128 at 10-12).

"[The] Court has a circumspect role when sitting in diversity and should not unduly speculate about what a state court might conclude, nor should [the Court] impose whatever rule [it] thinks best." *Combs,* 354 F.3d 568 at 597. Weighing the two published Kentucky Court of Appeals decisions recognizing the tort of negligent credentialing against the one unpublished Kentucky Court of Appeals decision holding that the tort is not recognized, the Court predicts that the Kentucky Supreme Court will recognize the tort of negligent credentialing. As a result, the Hospital's Motion for Judgment on the Pleadings is **denied** with respect to Plaintiff's negligent credentialing claim, found in Count Two and, according to the Hospital, in Count Five, of the Complaint.

### C. Plaintiff's negligence-*per-se* claims found in Counts Two and Three must be dismissed.

In Counts Two and Three, Plaintiff alleges that his injuries were caused as a result of the Hospital's violation of several statutes and administrative regulations.

---

[5] *Williams* does not answer, or aid in answering, the specific question of whether Kentucky recognizes the tort of negligent credentialing.

Negligence claims require that the plaintiff prove that the defendant owed plaintiff a duty, that the defendant breached the duty, and that plaintiff was consequentially injured. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). A negligence-*per-se* claim is "merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Young v. Carran*, 289 S.W.3d 586, 588-89 (Ky. Ct. App. 2008) (internal citations omitted). Under Kentucky law, a "person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." Ky. Rev. Stat. Ann. § 466.070. To succeed on such a claim, the plaintiff must show that: (1) the statute in question is penal in nature, or provides "no inclusive civil remedy," *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005); (2) that the plaintiff is "within the class of persons the statute is intended to protect," *Young*, 289 S.W.3d at 589; and (3) that the injury is of the type that the statute intended to protect. *Carman v. Dunaway Timber Co., Inc.*, 949 S.W.2d 569, 570 (Ky. 1997).

### 1. Plaintiff's negligence-per-se claims under Kentucky Revised Statutes Chapter 216B are not cognizable.

In Count Two of his Complaint, Plaintiff alleges that the Hospital owed him a "statutory duty under KRS Chapter 216B, including KRS 216B.155," which "include the obligation not only to establish, but also to implement and enforce [quality assurance, improvement, and credentialing] standards." (Doc. # 1-3 at 18-19). Plaintiff argues that a "violation of this statutory duty is actionable under KRS 446.070." *Id.* at 19. Chapter 216B of the Kentucky Revised Statutes is titled "Licensing and Regulation of Health Facilities and Services." The General Assembly passed Chapter 216B for the purpose of authorizing "the Cabinet for Health and Family Services to perform any certificate-of-need

function and other statutory functions necessary to improve the quality and increase access to health-care facilities, services, and providers, and to create a cost-efficient health-care delivery system for the citizens of the Commonwealth." Ky. Rev. Stat. Ann. § 216B.010.

The Kentucky Supreme Court has not spoken definitively on whether a plaintiff has a cognizable negligence-*per-se* claim based on alleged violations of Chapter 216B, and so the Court must once again look to the Kentucky Court of Appeals for guidance. The Kentucky Court of Appeals has recently considered the issue, deciding that alleged violations of Chapter 216B are not actionable as negligence-*per-se* claims. *Puckett v. Salyersville Healthcare Ctr.*, No. 2013-CA-1263, 2015 WL 3643437 (Ky. Ct. App. June 12, 2015). In its analysis, the Court of Appeals determined that plaintiff had satisfied the first two prongs of the standard—Chapter 216B provided no inclusive remedy, and plaintiff was within the class of people the statute was meant to protect. *Id.* at *4. However, the plaintiff failed to show that the injury suffered was the type of harm that Chapter 216B was designed to prevent. Instead, the Court of Appeals determined that Chapter 216B was designed "to prevent economic harm or the preclusion of access to health-care services by limiting the types and amount of costs which may be passed on by providers to patients." *Id.* In contrast, the harm alleged by the plaintiff was "related to physical injuries … not economic ones." *Id.*

The Court finds the Kentucky Court of Appeal's analysis in *Puckett* persuasive;[6]

---

[6] Other courts in this district have resolved the issue using the same analysis. *See Vanhook v. Somerset Health Facilities, LP*, 67 F. Supp. 3d 810, 824 (E.D. Ky. Dec. 15, 2014) ("The type of harm the statute aims to prevent, then, is economic in nature. [Plaintiff] has not alleged any injury regarding her access to health care or economic harm. Rather, [Plaintiff] suffered a physical harm…Thus, [she] cannot state a claim of negligence per se for violation of [Ky. Rev. Stat. Ann.] Chapter 216B, and this claim must be dismissed.").

the claims of physical harm in this case do not support Plaintiff's negligence-*per-se* claims under Chapter 216B, statutes enacted to combat economic injury.[7] Therefore, Plaintiff's negligence-*per-se* claims predicated upon alleged violations of Chapter 216B, as found in Counts Two and Three of the Complaint, are dismissed, and the Hospital's Motion for Judgment on the Pleadings with regard to these claims is **granted**.

> **2. *Plaintiff's negligence-per-se claims under 902 Kentucky Administrative Regulations 20:016 and 20:260 are not cognizable.***

Plaintiff's Complaint also asserts negligence-*per-se* claims based on alleged violations of two Kentucky Administrative Regulations. Specifically, in Count Two, Plaintiff alleges that the Hospital owed him a duty to comply with 902 Ky. Admin. Reg. 20:016, which requires hospitals to develop and adopt policies and bylaws that "establish a procedure for granting and withdrawing staff privileges, performing credential reviews, and providing a mechanism for appeal of decision regarding staff membership and privileges." (Doc. # 1-3, at 19). According to Plaintiff, this duty extends beyond establishing, and onto implementing and enforcing the standards, and violation of the regulation is "actionable under KRS 446.070." *Id*. This administrative regulation, titled "Hospitals; operations and services," serves to "establish[ ] the minimum licensure requirements for the operation of hospitals and the basic services to be provided by hospitals." 902 Ky. Admin. Reg. 20:016.

---

[7] The Court recognizes that licensure requirements for healthcare facilities and service providers relate to public safety and that the overarching goal of hospital licensing is the safety of those in the care of healthcare facilities and providers. However, hospitals do not license professionals, and the statute under which these negligence-*per-se* claims have been interpreted by Kentucky courts to protect against economic harm.

In Count Three, Plaintiff alleges that the Hospital had a duty "to comply with 902 KAR 20:260 § 4, and to appoint a physician medical director in connection with the application for and grant of special health clinic status to [the Commonwealth Bariatric Center]." (Doc. # 1-3, at ¶ 93). This administrative regulation was promulgated to "provide[ ] minimum licensure requirements for the operation of special health clinics." 902 Ky. Admin. Reg. 20:260.

Negligence-*per-se* claims predicated upon alleged violations of administrative regulations are permitted in the "specific context of public safety." *Centre College v. Trzop*, 127 S.W.3d 562, 567 (Ky. 2003). Thus, a cause of action under Ky. Rev. Stat. Ann. § 446.070 for violation of an administrative regulation exists only if the regulation: (1) is consistent with the enabling legislation, and (2) applies to the safety of the citizenry. *St. Luke Hospital, Inc. v. Straub*, 354 S.W.3d 529, 535 (Ky. 2011) (citing *Centre College*, 127 S.W.3d at 567).

Neither the Kentucky Supreme Court nor the Kentucky Court of Appeals has spoken to whether a negligence-*per-se* claim is cognizable under either of these administrative regulations. The Court must therefore make "the best prediction … of what the Kentucky Supreme Court would do if confronted with [the] question." *Combs*, 354 F.3d at 578.

A recent Kentucky Supreme Court case provides guidance. In *McCarty v. Covol Fuels No. 2, LLC*, 476 S.W.3d 224 (Ky. 2015), the plaintiff brought negligence-*per-se* claims based on the alleged violation of Kentucky Revised Statutes Chapters 351 and 352, and on administrative regulations promulgated though enabling legislation in Chapters 351 and 352. After determining that the negligence-*per-se* claim predicated on

these statutes was not cognizable for the plaintiff, the Kentucky Supreme Court turned to the administrative regulations. *Id.* at 233. Relying on *Straub*, the Kentucky Supreme Court determined that, because plaintiff had no viable negligence-*per-se* claim under Chapters 351 or 352, "[a]ny administrative regulation [enabled by Chapters 351 or 352] purporting to reach that hazard would fail as exceeding the scope of its enabling statute." *Id.* at 234. In short, the Kentucky Supreme Court found that it made "little sense for the legislature to enact statutory provisions" with limitations as to the class of persons covered, and then "have those same statutes serve as enabling legislations for administrative regulations … far removed… [from the purpose of the enabling statutes]." *Id.* at 233.

The enabling statutes creating the regulations in 902 Ky. Admin. Reg. 20:260 and 20:016 are found in Chapter 216B.[8] This Court has already determined that Plaintiff's negligence-*per-se* claims under Chapter 216B are not viable as they are pled. Following *McCarty*, this Court also finds that these administrative regulations, enabled by Chapter 216B, cannot provide the predicate legislation for a negligence-*per-se* claim without exceeding the scope of their enabling statute. Because the regulations Plaintiff relies upon fail on the first prong of the *Straub* rule, the Court's analysis stops there. Therefore, Plaintiff's negligence-*per-se* claims predicated upon alleged violations of 902 Ky. Admin. Reg. 20:260 and 20:016, as found in Counts Two and Three of the Complaint, are dismissed, and the Hospital's Motion for Judgment on the Pleadings with regard to these

---

[8] Each of the two administrative regulations cited by Plaintiff in these counts is promulgated under three statutes. For each, two of the three are found in Chapter 216B, and the third for each is unrelated to portions of the regulations cited by Plaintiff. The two non-Chapter 216B statutes are § 13A.100, which requires administrative bodies with the power to promulgate administrative regulations prescribe certain statements, processes, and procedures, and § 216.2970(1), which requires that hospitals offering obstetric or similar services provide for infant auditory screening.

claims is **granted**.

D.     **The Hospital's Motion for Summary Judgment is denied.**

Plaintiff's claims of negligent supervision and negligent training seek to hold the hospital "directly liable to the victim and not vicariously liable for [Doctor Husted's] conduct." *Big Spring Assembly of God, Inc. v. Stevenson*, Nos. 2012-CA-001350, 2012-CA-1423, 2014 WL 4267433, at *2 (Ky. Ct. App. Aug. 29, 2014). Kentucky "recognize[s] and acknowledge[s] the existence of claims of negligent training and supervision," *Turner v. Pendennis Club*, 19 S.W.3d 117, 121 (Ky. Ct. App. 2000), as "separate torts from general negligence." *Rankin v. Jefferson Special Police, Inc.*, No. 2011-CA-1209, 2013 WL 5312504, at *3 (Ky. Ct. App. Sept. 20, 2013) (citing *Smith v. Isaacs*, 777 S.W.2d 912, 914 (Ky. 1989)). "In recognizing the tort of negligent supervision, Kentucky has adopted the Restatement (Second) of Agency § 213," *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003), which addresses personal liability for "conducting an activity through servant or other agents." *See Smith*, 777 S.W.2d at 914.

In its Motion for Summary Judgment, the Hospital argues that it is entitled to judgment as a matter of law on Plaintiff's negligent-supervision and negligent-training claims because Doctor Husted was an independent contractor, not an employee, and so the Hospital cannot be liable for negligently training and supervising Doctor Husted. (Doc. # 112-1 at 1-2). Plaintiff does not dispute the fact that Doctor Husted was an "independent contractor," rather than an employee. (Doc. # 126).

Nevertheless, the Hospital's argument fails. Kentucky law does not limit liability for this tort to employer-employee relationships, but also allows liability to extend to principal-agent and servant relationships. *See Smith*, 777 S.W.2d at 914 (finding liability

13

exists for "conducting an activity through servants *or other agents*.")[9] (Emphasis added). Plaintiff has alleged that Doctor Husted was an agent of the Hospital. (Doc. # 1-3, at ¶ 15). And this allegation can support Plaintiff's negligent-training and negligent-supervision claims. Therefore, the Hospital's Motion for Summary Judgment on Count Five with respect to Plaintiff's negligent-supervision and negligent-training claims is **denied**.

IV. **CONCLUSION**

Accordingly, for the reasons stated herein,

**IT IS ORDERED:**

(1) The Hospital's Motion for Judgment on the Pleadings on Plaintiff's negligent credentialing claims (Doc. # 100) is **DENIED**;

(2) The Hospital's Motion for Judgment on the Pleadings on Plaintiff's negligence-per-se claims found in Counts Two and Three of the Complaint (Doc. # 100) is **GRANTED**;

(3) Plaintiff's unopposed Motion to Supplement (Doc. # 138) is **GRANTED**; and

(4) The Hospital's Motion for Summary Judgment on Count Five of the Complaint (Doc. # 112) is **DENIED**.

---

[9] In fact, one case the Hospital cites in support of its argument recognizes that an employer-employee relationship is not the only relationship that can give rise to liability for negligent supervision or training. *See Southard v. Belanger*, 966 F. Supp. 2d 727, 744 (W.D. Ky. 2013) ("Mr. Belanger was not Martens Transport's employee, or its servant or agent.").

The 31st day of October, 2017.


Signed By:
*David L. Bunning*      DB
United States District Judge

K:\DATA\Opinions\London\15-138 Carr v. LCRH MOO re MJOP MSJ Counts 2 3 5.docx

15