UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 15-138-DLB-HAI

GEOFFREY CARR, as Guardian of                                              PLAINTIFF
the Estate of Joseph Carr


vs.                              **MEMORANDUM ORDER**


LAKE CUMBERLAND REGIONAL
HOSPITAL, et al.                                                         DEFENDANTS

*** *** *** *** ***

## I.    INTRODUCTION

In this medical-negligence action brought by Plaintiff Geoffrey Carr, as the Guardian of Joseph Carr, against the doctor—Doctor John Husted—who performed Joseph's bariatric surgery, and the hospital where the bariatric surgery was performed—Lake Cumberland Regional Hospital ("Hospital"), several discovery disputes require the Court's attention.  Specifically, the Hospital has filed Objections to the Magistrate Judge's Orders (Docs. # 188 and 217), which found that certain documents were not protected from discovery disclosure under the attorney-client privilege or the work-product doctrine.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2009, Doctor Husted performed bariatric surgery on Joseph Carr at the Commonwealth Bariatric Center in Pulaski County, Kentucky.  (Doc. # 1-3 at ¶¶ 9, 34).  The Hospital operates the Commonwealth Bariatric Center.  *Id.* at ¶ 9.

After the surgery, Plaintiff allegedly began suffered from complications as a result of the surgery, including the aspiration of food into his lungs. *Id.* at ¶¶ 65-67. On or about March 19, 2015, Plaintiff underwent revision surgery, at which point Plaintiff allegedly learned that Doctor Husted had "performed a surgery that appeared incomplete and had left [Plaintiff] with permanent revisions of his anatomy not recognizable as any approved bariatric surgery." *Id.* at ¶ 68. Accordingly, Plaintiff alleges that without his consent, Doctor Husted performed an "unrecognized, unaccepted, and experimental procedure" on him. *Id.* at ¶¶ 34-35. Plaintiff alleges that Doctor Husted did not have the privileges to perform the surgery as it was performed. *Id.* at ¶ 38. Plaintiff further claims that, before his surgery, the Hospital was or should have been on notice of numerous concerns over the results of surgeries that Doctor Husted had performed. *Id.* at ¶ 40. As a result, Plaintiff filed the instant action on July 9, 2015, in the Pulaski County Circuit Court. *Id.* at p. 5. Plaintiff's complaint asserts eleven causes of action against Doctor Husted and the Hospital. *Id.* at p. 17-27.

During the course of discovery, the Hospital filed objections to Plaintiff's request for certain documents. Magistrate Judge Ingram reviewed those objections and issued two Orders (Docs. # 188 and 217). In the September 15, 2017 Order (Doc. # 188), Magistrate Judge Ingram determined that the bulk of the contested documents were protected by the attorney-client privilege, the work-product doctrine, or both. (Doc. # 188). Four of the documents, however, did not fall under either protection, or contained only small protected passages that could be redacted. *Id.* at 4-7. In the October 16, 2017 Order (Doc. # 217), Magistrate Judge Ingram denied the Hospital's Motion for a Protective Order on two additional documents (Doc. # 217). Pursuant to Federal Rule of Civil

Procedure 72, the Hospital filed Objections, arguing that Magistrate Judge Ingram's determinations were "clearly erroneous." (Docs. # 197 and 232).

## III. ANALYSIS

### A. The Attorney-Client Privilege

A federal court sitting in diversity jurisdiction applies state law to the question of attorney-client privilege and federal law to the question of work-product. *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006). "[T]he burden of establishing the existence of [a] privilege rests with the party asserting the privilege." *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 454 (6th Cir. 1983). "While the purpose of the attorney-client privilege is to encourage clients to communicate freely with the attorneys, the privilege is narrowly construed because it reduces the amount of information discoverable during the courts of the lawsuit." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997); s*ee also Frankfort Reg'l. Med. Ctr. v. Shepherd,* No. 2015-SC-438, 2016 WL 3376030, at *12 (Ky. Jun. 16, 2016) ("[P]rivileges of all stripes are to be strictly construed.")

In Kentucky, the attorney-client privilege "allows a client 'to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client.'" *Collins v. Braden*, 384 S.W.3d 154, 161 (Ky. 2012) (quoting Ky. R. Evid. 503(b)). "Client" refers to both natural and fictitious persons, such as corporations and associations. Ky. R. Evid. 503(a)(1); *see also Moss v. Unum Life Ins. Co.*, No. 5:09-CV-209, 2011 WL 321738, at *5 (W.D. Ky. Jan. 28, 2011) (citing *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 348 (1985)) ("Corporations act through their agents, and the

attorney-client privilege applies to communications between counsel and top management.").

The attorney-client privilege is limited to communications to the attorney, and does not protect the underlying facts in the communication from other means of discovery. *Collins*, 384 S.W.3d at 159. "[W]hether a particular communication is privileged depends (absent waiver) not on what use was ultimately made of the communication, but on the facts and circumstances under which the communication was made." *Lexington Pub. Library v. Clark*, 90 S.W.3d 53, 60 (Ky. 2002).

### B. The Work-Product Doctrine

The work-product doctrine protects the "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible [memorializations]" of an attorney "prepared for formed by counsel in the course of his legal duties." *Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947). It is "not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation*.*" *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) (citing Fed. R. Civ. P. 26(b)(3)). The purpose of this doctrine is to permit an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference ... to promote justice and to protect [his] clients' interests." *Hickman* at 510. It is a duty "'distinct from and broader than the attorney-client privilege." *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.,* 293 F.3d 289, 294 (6th Cir. 2002) (quoting *In re Antitrust Grand Jury,* 805 F.2d 155, 163 (6th Cir. 1986). "Although the rule affords special protections for work-product that reveals an attorney's

4

mental impressions and opinions, other work-product materials nonetheless may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship." *In re Perrigo Co.*, 128 F.3d at 437.

There are three requirements for shielding documents from discovery under the work-product doctrine. "Rule 26(b)(3) protects (1) 'documents and tangible things'; (2) 'prepared in anticipation of litigation or for trial'; (3) 'by or for another party or its representative.'" *In re Professionals Direct Ins. Co.,* 578 F.3d 432, 438 (6th Cir. 2009) (internal citations omitted). "Prepared in anticipation of litigation" is determined by asking two questions: "(1) whether that document was prepared "because of" a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *Id.* at 439 (quoting *United States v. Roxworthy,* 457 F.3d 590, 594 (6th Cir. 2006)). Similar to the attorney-client privilege, "[a] party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared in anticipation of litigation." *Roxworthy,* 457 F.3d at 593 (internal quotations omitted). When a document prepared in anticipation also serves an ordinary business purpose, the moving party has the burden to show that anticipated litigation was the "driving force behind the preparation of each requested document." *In re Professionals Direct Ins. Co.,* 578 F.3d at 439 (quoting *Roxworthy,* 457 F.3d at 595).

C. **The September 15, 2017 Order and Objections**

There are four documents at issue in the September 15, 2017 Order (Doc. # 188), and the responsive Objections (Doc. # 197), which the Court will address in turn, identifying each document by Bates number.

5

*1.* *1389-90* – This document is a memorandum memorializing a conversation among Doctor Husted, Sheryl Glasscock (the Hospital's Chief Nursing Officer), Steve Sloan (the Hospital's Chief Financial Officer), and Robert Parker (the Hospital's Interim CEO). It is given the working title, "Memo at Carol Hendry's Request (Counsel) to describe the contents of 2/11/10 meeting." There is no known author and no indication that the memorandum was sent to Counsel Hendry. According to Mr. Parker, this memo is an example of the response to Ms. Vanhook's (the Hospital's Risk Manager) request that hospital management "reduce to writing for counsel's use and investigation any information regarding the bariatric program or communications with Dr. Husted." (Doc. # 197-2 at 3).

Magistrate Judge Ingram determined that the memorandum simply recorded communications between Hospital employees and Doctor Husted, who was potentially adverse to the Hospital and so therefore could not be considered a "client." (Doc. # 188 at 4). Magistrate Judge Ingram further determined that the communication was not confidential, that relaying mere factual observations preclude confidentiality, and that such a verbatim recitation fails to move the communication under the protection of either the attorney-client privilege or the work-product doctrine. *Id.* at 3-4.

That facts contained within a privileged attorney-client communication are available through other discovery methods does not render the communication unprivileged. *See Collins,* 384 S.W.3d at 159. Nevertheless, there is no indication that this memorandum was communicated to an attorney or another representative of the Hospital for the purposes of legal representation, or that any person conveying this memorandum intended for it to be confidential. *See* Ky. R. Evid. 503. Claims of privilege

must be strictly construed, *Stidham v. Clark*, 74 S.W.3d 719, 722-23 (Ky. 2002), and the Hospital has not made a sufficient showing to prove that this memorandum is protected by the attorney-client privilege.

However, the work-product doctrine protects this document. According to Mr. Parker's affidavit, this memorandum was prepared in anticipation of litigation relating to Doctor Husted's bariatric surgeries at the Hospital. (Doc. # 197-2 at 2). By virtue of its existence, it must have been prepared by one of the three hospital representatives at the meeting. Thus, the Hospital has made a sufficient showing that this document meets the requirements of Rule 26(b)(3). Therefore, the Hospital's objection to disclosure of these two pages is **sustained**, and the Court modifies the Magistrate Judge's Order (Doc. # 188) to preclude disclosure of this document.

    **2.**    *1436* – This document is a chain of four emails on February 17, 2010, lasting from 7:11 a.m. to 9:33 a.m. Only three of these emails are at issue, and the Court will address each communication separately.

Magistrate Judge Ingram determined that the single sentence in the 9:26 a.m communication was protected by the attorney-client privilege, as was the final sentence in the 8:29 a.m. email. (Doc. # 188 at 5). Magistrate Judge Ingram also determined that the sentences fell within the ambit of the work-product doctrine. *Id.* The rest of the communications, including the entirety of the 7:11 a.m. email, were found to be unprotected by either privilege. *Id.*

Although Ms. Vanhook avers that this page of emails was collected in anticipation of litigation by her, and then forwarded on to litigation counsel, the simple act of forwarding an email will not make the underlying email attorney-client privileged; rather, it is the intent

7

of the parties creating the email that is determinative. *Clark*, 90 S.W.3d at 60 ("If the communication would have been privileged if made to the attorney, it is no less privileged because it was made to [a client representative] who forwarded it to the attorney. However, if the communication would not have been privileged if made to the attorney, it did not become privileged just because it was subsequently forwarded to the attorney.").

Mr. Parker's affidavit indicates that he intended the email communication, directed in part at in-house counsel Ms. Hendry, to be confidential and in anticipation of litigation. (Doc. # 197-2 at 2). The Court finds that communicating with an attorney in anticipation of litigation shows that the Hospital was in communication with counsel to facilitate the rendition of professional legal services. This is a sufficient showing for the Hospital to meet its burden. Therefore, both the 7:11 a.m. and the 8:29 a.m. emails are protected by the attorney-client privilege.

Although the Hospital has not provided an affidavit as to Mr. Seraphine's[1] intent in drafting the 9:26 a.m. email, it is in direct response to at least one of Mr. Parker's emails, and also directly includes in-house counsel Ms. Hendry as a recipient. For these reasons, the 9:26 a.m. email is also protected by attorney-client privilege. The Hospital's objections to these emails are **sustained**, and the Magistrate Judge's Order (Doc. # 188) is modified to prohibit disclosure of these emails.

---

[1] Mr. Seraphine is listed as the Hospital's former CEO. According to a letter sent to Magistrate Judge Ingram's chambers on September 29, 2017, at 1:15:53 p.m., Mr. Seraphine left the Hospital to accept a new position within the LifePoint (the sole member of the LLC under which the Hospital is organized to do business) corporate structure. Because he remained within the corporate structure, the attorney-client privilege has not been waived by voluntary disclosure to a third party. *Crabb v. KFC Nat. Mgmt. Co.*, 952 F.2d 403 at *2 (6th Cir. 1992) (table) ("It is well settled that attorney-client privilege is not waived merely because the communications involved extend across corporate structures to encompass parent corporations, subsidiary corporations, and affiliated corporations.").

**3.** *1459-61* – This document is email correspondence between Ms. Vanhook and Ms. Cathi Roskind, the Commonwealth Bariatric Center's Program Director. The bulk of the document is Ms. Roskind's notes from an unplanned meeting with Doctor Husted, where it is evident that the Hospital and Doctor Husted are adverse. Ms. Vanhook responded to this email, stating that she would ensure that the "administrative team" was aware, and requested that Ms. Roskind "maintain the security and confidentiality of all the Commonwealth Bariatric Center's patient medical records." Ms. Vanhook indicates in her affidavit that this email correspondence was "investigative communications consistent with [her] request to reduce to writing for attorneys' use all bariatric information or communications with Dr. Husted." (Doc. # 197-1 at 3).

Magistrate Judge Ingram determined that the information contained within these emails was simply a memorialization, and was likely prepared in the ordinary course of business or because of "obvious requirements unrelated to the litigation." (Doc. # 188 at 6). As a result, Magistrate Judge Ingram determined that these documents were not protected by either privilege.

The availability of facts through other discovery tools does not obviate the attorney-client privilege of a communication containing those facts. *See Collins*, 384 S.W.3d at 159. Nor does it allow an adverse party to obtain discovery of those facts contrary to Rule 26(b)(3), the work-product doctrine. *Hickman*, 329 U.S. at 511-12.

The Hospital offers no affidavit from Ms. Roskind that she drafted and sent the memorialization of her conversation with Doctor Husted in anticipation of litigation, intended it to be confidential, or sent it to counsel. Although she memorialized statements by Doctor Husted regarding the recent death of one of his patients, the email indicates

9

that she was primarily concerned with the fact that Doctor Husted had apparently been recording the conversation. The Hospital has the burden to show the attorney-client privilege, and it has not met this burden.

Despite Ms. Vanhook's conclusions in her affidavit that this email from Ms. Roskind to her was an investigative communication (Doc. # 197-1 at 3), Ms. Roskind, the author of the email, provided no affidavit suggesting that she created this email in anticipation of litigation. In fact, Ms. Vanhook's response, indicating she would let the "administrative team" know about the conversation Ms. Roskind memorialized—as opposed to in-house counsel or outside counsel—suggests that at the time of the creation of the emails, neither party crafted their emails "in anticipation of litigation." For these reasons, the Hospital's objections are **overruled**, and the Court **affirms** the Magistrate Judge's Order (Doc. # 188) concluding that these emails are not protected from discovery.

4. *1468* – This document is an email from Ms. Roskind to Ms. Glasscock, Mr. Parker, and Ms. Vanhook, conveying to the latter three that Doctor Husted had emptied and left his office, that he had not communicated with the Commonwealth Bariatric Center on the matter, and that he had reached out to his patients with his new office information, which Ms. Roskind knew because one of the recipients of the correspondence was a good friend of hers. Again, Ms. Vanhook avers that this email correspondence was "investigative communications consistent with my request to reduce to writing for attorneys' use all bariatric information or communications with Dr. Husted." (Doc. # 197-1 at 3).

Magistrate Judge Ingram found that the email contained "mere factual content" and thus was unprotected by either the attorney-client privilege or the work-product doctrine.

(Doc. # 188 at 7).

Although the presence of mere factual content will not render a privileged communication un-privileged, Magistrate Judge Ingram correctly found that the Hospital had not met its burden showing that Ms. Roskind intended this document to be confidential, or that she conveyed it to Mr. Parker, Ms. Glasscock, and Ms. Vanhook in anticipation of litigation. For these reasons, the Hospital's objections are **overruled**, and the Court **affirms** the Magistrate Judge's Order (Doc. # 188) with regard to this email.

### D. The October 16, 2017 Order and Objections

On September 1, 2017, Magistrate Judge Ingram overruled the Hospital's objection to producing documents Bates-stamped 1473-74. (Doc. # 178). Magistrate Judge Ingram also provided the Hospital the opportunity to fully brief the issue in a Motion for a Protective Order, which it subsequently filed. (Doc. # 184). The Hospital filed the motion (Doc. # 184). After consideration of the Motion and the attached affidavit, Magistrate Judge Ingram determined that the emails were not protected from disclosure by the attorney-client privilege or the work-product doctrine. The Hospital filed Objections (Doc. # 232), to which both Doctor Husted (Doc. # 242) and Plaintiff responded (Doc. # 244).

The Court will address the two emails at issue—both of which are found on document 1473—in turn. The first email is from Ms. Roskind, forwarding an email she received from Gayle Ellison to Ms. Vanhook, on March 5, 2010, at 9:16 a.m. The contents of the email from Ms. Ellison have been disclosed; it is Ms. Roskind's email communication to Ms. Vanhook that is disputed. Ms. Vanhook forwarded this email chain to Mr. Parker, Ms. Glasscock, Dr. Citak, and Counsel Hendry, without apparent

commentary, on March 7, 2010, at 11:18 a.m. The next day, at 8:28 a.m., Dr. Citak responded to all, cc'ing the Hospital's new CEO, Mark Brenzel.

Magistrate Judge Ingram determined that the first email was a "mere transmittal communication" from Ms. Roskind to Ms. Vanhook, simply forwarding another email already produced to Plaintiff. (Doc. # 217 at 1-2). Magistrate Judge Ingram also determined that the second email memorialized a discussion between Dr. Citak and Doctor Husted that was primarily "clinical," and also dealt with Doctor Husted's future plans. *Id.* at 2. Accordingly, Magistrate Judge Ingram ordered the emails be disclosed.

"Whether a particular communication is privileged depends (absent waiver) not on what use was ultimately made of the communication, but on the facts and circumstances under which the communication was made." *Clark*, 90 S.W.3d at 60. Under Kentucky, law, the attorney-client privilege extends to communications made between representatives of the client. Ky. R. Evid. 503(b)(4). A "representative of the client" is defined as a "person having authority to obtain professional legal services, or to act on advice thereby rendered on behalf of the client." Ky. R. Evid. 503(a)(2)(A). A communication is confidential if "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Ky. R. Evid. 503(a)(5).

The Hospital has not met its burden of showing that the March 5, 2010 communication from Ms. Roskind to Ms. Vanhook was confidential. It has not provided an affidavit or deposition testimony suggesting that the author, Ms. Roskind, did not intend for the email to be disclosed to third-parties. In fact, the contents of the email suggest

that Ms. Roskind invited disclosure to unknown parties. This email is therefore not protected by the attorney-client privilege.

Nor is the email protected by the work-product doctrine. The Hospital has not shown, through affidavit or other means, that the email was forwarded by Ms. Roskind in anticipation of litigation, and not as part of an ordinary business purpose. Ms. Vanhook's affidavit is the only affidavit attached to the Hospital's Objections, and it identifies the Hospital's "anticipation of litigation" as related to "a probable claim or claims related to bariatric surgeries performed by [Doctor Husted]." (Doc. # 232-1 at 1). However, neither Ms. Roskind's email nor the email she forwarded addressed bariatric surgeries performed by Doctor Husted. Rather, the forwarded email addressed a bariatric surgery performed by another physician. The Hospital has failed to show that anticipation of litigation was the "driving force behind the preparation" of this email. *In re Professionals Direct Ins. Co.*, 578 F.3d at 439. Thus, the Hospital has not met its burden of showing that the email created by Ms. Roskind is protected from disclosure under the work-product doctrine.

The second email contains communication among Hospital management and in-house counsel regarding "Bariatrics." However, the contents of the email do not suggest that it was created or sent to help facilitate the rendition of professional legal services. Nor did the Hospital provide any factual support for its arguments through an affidavit of its author, Doctor Citak. Instead, the Hospital cited to an affidavit executed by Ms. Vanhook on September 1, 2017, and attached an affidavit executed by Ms. Vanhook on September 12, 2017, an entirely different day. (Docs. # 232 and 232-1). And the direct quotes in the Hospital's Objections are not found in the attached affidavit. *Id.* In fact, the Hospital refers to paragraph sixteen of the affidavit, when the attached affidavit contains

13

only fifteen paragraphs. *Id*. The burden of proving a privilege or exception to the discovery rules is on the moving party, and the Hospital has failed to meet its burden. As a result, the Hospital's objections are **overruled**, and the Magistrate Judge's Order denying the Hospitals' motion for a protective order (Doc. # 217) is **affirmed**.

IV.   **CONCLUSION**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)   The Hospital's Objection (Doc. # 197) to the Magistrate Judge's Order (Doc. # 188) is **sustained in part and overruled in part**, as stated in this Memorandum Order; and

(2)   The Hospital's Objection (Doc. # 232) to the Magistrate Judge's Order (Doc. # 217) is **overruled**.

The 15th day of November, 2017.



Signed By:
David L. Bunning
United States District Judge